## Aramede S. Tarbox *vs.* Alfred L. Tarbox.

### Sagadahoc.   Opinion January 7, 1914.

*Decree.   Demurrer.   Due Care.   Equity.   Exceptions.   Income.   Injunction.*
*Master.   Mutual Mistake.   Taxes.   Trustee.   Will.*

Alfred Lemont, late of West Bath, in the County of Sagadahoc, died on the
21st day of August, 1896, leaving no widow, and as his only heir at law
and next of kin, the plaintiff, a daughter.   By his last will and testa-
ment he bequeathed to Harry R. Tarbox, then of said Bath, all of the
bank stock of the deceased, and to the defendant all of the bonds of the
deceased, the said legatees being his grandsons and sons of the plaintiff,
and bequeathed to the plaintiff all the rest, residue and remainder of the
estate of said deceased.   The plaintiff, being dissatisfied with the pro-
visions of the will, a compromise was effected whereby Harry R. Tarbox
agreed to assign to the plaintiff the income of the bank stock and the
defendant agreed to assign to the plaintiff the income of the bonds during
her natural life.   The original assignment had been lost for many years,
but was subsequently found in the plaintiff's possession.   This assignment,
in fact, included the principal, as well as the income.   From the time of the
compromise until after the filing of the bill, the parties believed that the
bonds belonged to the defendant and that the income only had been assigned
to the plaintiff.

*Held:*

1. The phrase "mutual mistake," as used in equity, means a mistake common
   to all the parties to a written contract, or instrument, and usually relates
   to a mistake concerning the contents, or the legal effect of the contract or
   instrument.

2. If parties are ignorant of facts on which their rights depend, or errone-
   ously assume that they know those rights and deal with their property
   accordingly, not upon the principle of compromising doubts, the court will
   relieve against such transactions.

3. A mutual mistake which will afford ground for relief from a contract by
   reforming it means a mistake reciprocal and common to both parties, when
   each alike labors under the misconception in respect to the terms of the
   written instrument.

4. Constructive trusts include all those instances in which a trust is raised
   by the doctrine of equity for the purpose of working out justice in the
   most efficient manner where there is no intention of the parties to create

such relation, and in most cases contrary to the intention of the one holding the legal title and when there is no express or implied, written or verbal declaration of trust.

5.  If a person has assumed to act as trustee, and having received money in that character, misapplies it, he is accountable for the proceeds to the cestui que trust and cannot defend himself by showing that in fact he was not legally a trustee, or that when he committed the breach he did not know who his cestui que trust was.

On exceptions by both parties. Bill sustained. Plaintiff's exceptions overruled. Defendant's exceptions overruled. Decree below affirmed with additional costs.

This is a bill in equity praying that the defendant may be declared to be a trustee of all bonds bequeathed to him by the will of Alfred Lemont, and received by him from the executors of said will, and all other bonds or other property into which said original bonds, or the proceeds thereof, have been converted by the defendant; that the defendant be ordered to pay to her the income thereof during her natural life; for an injunction and an accounting. The defendant filed an answer to said bill and the case was sent to a master, who made his report.

A decree, was entered sustaining the bill and confirming the master's report in detail. The plaintiff and defendant excepted to certain parts of the master's report.

The case is stated in the opinion.

*William T. Hall, and Barrett Potter,* for plaintiff.

*Symonds, Snow, Cook & Hutchinson,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, HANSON, JJ.

HANSON, J. This is a bill in equity to enforce an alleged trust, and comes to this court on exceptions by both parties. The original bill was dated October 14, 1909, and related to bonds aggregating in amount $64,500. The plaintiff alleges "that the defendant held the bonds in trust to pay the income thereof to the plaintiff during her lifetime, and that the defendant disregarding his duty had paid only a portion of said income, and neglects and refuses to pay the balance, denies the trust relation, and declares that he will pay no more of said income hereafter."

The prayer of the bill is, "that the bonds and the proceeds thereof may be charged with a trust in favor of the plaintiff for the payment to her of the income thereof during the term of her natural life," for an injunction, an accounting and other relief.

The writ of injunction was thereupon granted and $57,000 of the fund was turned over to the Lincoln National Bank of Bath, as commanded therein, to await the further order of court.

On March 22, 1910, a master was appointed. The record discloses that the parties were thus far acting under, and governed by, the following facts:

Alfred Lemont, of West Bath, a widower, died August 21, 1896. The plaintiff was his only child. The defendant was his grandson, and is the oldest son of the plaintiff. Alfred Lemont left an instrument purporting to be his last will, in which he named the plaintiff and her husband, since deceased, executors, and in which he bequeathed to Harry R. Tarbox, the second son of the plaintiff, all of the testator's bank stock, and to the defendant his entire holdings of bonds. The plaintiff being dissatisfied with the provisions of the will upon presentation of the same for probate, appeared as a contestant. There was a compromise, and the will was admitted to probate in October, 1896. By the compromise, as appears by the pleadings, Harry R. Tarbox agreed to assign to the plaintiff the income of the bank stock mentioned in the will, and the defendant agreed to assign to the plaintiff the income of the bonds bequeathed to him in the will, for and during her natural life. This arrangement was perfected, and from that time until after the filing of the bill, the parties believed that the bonds belonged to the defendant, and that income only had been assigned to the plaintiff.

The original bill proceeded upon that theory, and alleged that the defendant held the bonds in trust to pay the income to the plaintiff during her lifetime.

The answer denied a trust, but admitted the assignment of income, and also admitted that the defendant had refused to pay over a portion of the income for reasons set out in the answer, and offered to make good any shortage.

While the accounting was in progress, the original assignment which had been lost for many years was found in the plaintiff's possession. It was then discovered that the assignment included

principal as well as income, and that the plaintiff had executed an irrevocable will bequeathing the bonds to the defendant at her decease. The bill was then amended, the amendment setting out the discovery of the assignment, and alleging that "as a result of the mutual mistake as to the rights of the parties in the bonds, the defendant took possession of them, and became and remained a trustee of the same, and of their accumulations, and reinvestments, for the benefit of the plaintiff, and became subject in respect thereto, to the usual duties and obligations of a trustee." The amended bill prayed "that these bonds may be declared the absolute property of the plaintiff, subject to the provisions of the will, and that the defendant be held to the standard of due care in the investment of trust funds, and that he be required to make good any losses of principal or income resulting from lack of such care, and that he be required to pay interest on principal and income lost or withheld.

The defendant demurred to the amended bill on the ground that its allegations were not sufficient to establish a trust. The demurrer was sustained, and the plaintiff excepted, and again amended her bill, alleging "that the bonds have never been in the physical possession of the plaintiff, and that she had never seen them, or any of them, prior to the commencement of this suit, and that at the time of the decease of said Alfred Lemont, they were in a safety box in the Lincoln National Bank of said Bath, which had been used by the said Alfred Lemont in his lifetime, and they remained in said box together with certain other bonds some of which belonged to the plaintiff, and others to the defendant, for some time after the decease of the said Alfred Lemont, and until removed by the defendant. From time to time after the decease of said Lemont, the defendant, with the acquiescence of the plaintiff, took possession of the bonds in said list, to hold and manage the same, and reinvest the proceeds thereof, in trust for the plaintiff, finally obtaining possession of all of them, but without any waiver or surrender by the plaintiff of any rights belonging to her under the defendant's said assignment."

"And the plaintiff further avers, not waiving any rights under the general allegations of the preceding sentence, that as the result of a mutual mistake on the part of the plaintiff and defendant, as to their respective rights in said bonds, each supposing that the defend-

ant was the owner of the same, subject to the right of the plaintiff to receive and enjoy the income thereof during her life, the defendant took possession of said bonds, and became, and remained up to the time of the commencement of this suit, a trustee of said bonds and their accumulations and reinvestments, for the benefit of the plaintiff, and became subject in respect to the same to the usual duties and obligations of a trustee."

The amended bill charges conversion by the defendant of part of principal and income, investments in speculative stocks for his own use and benefit, and in particular an attempted investment through J. M. Fisher & Co., through whose failure the sum of $950 was lost by the defendant from the fund in question.

The prayer was amended by adding to paragraph I the words: "and that said bonds, with their accumulations and reinvestments, be declared to have been trust funds in the hands of the defendant, and the defendant to have been a trustee in respect to the same.

The defendant demurred and answered to the bill as thus amended, the demurrer was overruled, and defendant excepted. The answer to the amended bill denies that a trust existed for the reasons alleged in the bill as amended.

Upon request by the plaintiff, the court instructed the master, among other things, "that if he found there was such a mutual mistake as alleged in the third paragraph of the amended bill, and that as a result of that mistake the defendant took possession of and held and controlled the bonds described in the bill, or any of them, or the accumulations and reinvestments thereof, as alleged in said bill, the defendant was a trustee of the same, and said bonds, or the accumulations and reinvestments thereof, were trust funds in his hands." To which instruction the defendant excepted.

The defendant asked for instructions as to the care and judgment to be exercised in making investments, as to the degree of care, and for what negligence he would be liable, the extent of his liability thereunder, when interest was to be computed, the rate of interest, and especially that compound interest shall not be paid on any sum for losses or shortages or for any purpose. Such instructions were given to the master, and the plaintiff excepted. The master found as follows:

"Under this ruling, and after consideration of the evidence and testimony presented at the several hearings, the master finds that

the defendant was a trustee, and the bonds described in the bill, and the accumulations and reinvestments thereof, were trust funds in his hands."

The master also found that all reinvestments were made in the individual name of the defendant, including an attempted investment of $950, in stock of the United Fruit Company, which sum was a total loss to the trust fund by reason of the failure of his Boston agents, who conducted a bucket shop, but defendant does not appear to have known that they were not conducting a legitimate business; and also an investment of $3565 in the stock of the Amalgamated Copper Company; and that these investments were not authorized or ratified by the plaintiff.

The master also found that, as a result of the mutual mistake alleged in the amended bill as to the ownership of the bonds, the defendant paid taxes on the trust fund to and including 1909, which, with interest added to December 1, 1912, amounted to $3634.44. And the court ruled pro forma, upon motion of defendant's counsel, that the defendant was entitled to a commission of one and one-half per centum on income coming into his hands, which, if he was finally found to be a trustee, would amount to $553.53.

Decree was entered sustaining the bill, and confirming the master's report in detail.

The exceptions taken before the master are again presented to certain findings of the final decree. The defendant excepts to so much of the final decree as finds that he was a trustee, and in respect to investments, and the plaintiff excepts to the allowance of commission, and as to certain taxes charged to her as paid by the defendant.

The issues thus raised between the parties may be considered in the order stated.

The pleadings disclose a mutual mistake as alleged in the amended bill, but the defendant's counsel urges (1) that the defendant cannot be a trustee under such a mutual mistake as described in the pleadings and found by the master and the court, and (2) that as the law stands at present, such a mistake is not sufficient to create a trust of the character and liability set out in the bill, and (3) the most that can be claimed in the case is that the defendant was a mere custodian of the plaintiff's property, and being a mere custodian, he is not liable to the full extent to which a trustee is held.

In support of his position, counsel for defendant cites *Savings Bank* v. *Merriam,* 88 Maine, 146,—"to create a trust the acts or words relied upon must be unequivocal, implying that the person creating the trust holds the property as trustee for another;" and says that comparing the master's finding under the rule given him with that rule, "it is at once clear that no trust existed in the present case."

And the plaintiff's counsel as earnestly contends that a constructive trust may be based on the mutual mistake of fact appearing in this case.

Defendant's counsel in an elaborate and helpful brief contests the claims of plaintiff's counsel in a brief of equal merit, as to the law upon this branch of the case, and insists that "while it may be admitted that equity has jurisdiction to relieve from the consequences of a mistake, it is not admitted that under such a finding as that made by the master in the present case a trust was created."

Was a trust created in this case? The phrase "mutual mistake," as used in equity, means a mistake common to all parties to a written contract or instrument, and it usually relates to a mistake concerning the contents, or the legal effect of the contract or instrument.

Eaton on Equity, sec. 307; *Page* v. *Higgins,* 150 Mass., 27; 5 L. R. A., 152, and cases cited.

This court in considering the subject of mistake in a bill to compel reconveyance of real estate conveyed under mistake as to complainant's rights, and the application of a rule to determine the question, held, that "if the defendant was as ignorant as the plaintiffs, the mistake was mutual. If he was not ignorant, then he knowingly took advantage of their ignorance, and obtained the deeds fraudulently." *Freeman* v. *Curtis,* 51 Maine, 140.

So if parties are ignorant of facts on which their rights depend, or erroneously assume that they know those rights, and deal with their property accordingly, not upon the principle of compromising doubts, the court will relieve against such transactions. *Blakeman* v. *Blakeman,* 39 Conn., 320, 2 Pom. Eq. Jur., 315.

A mutual mistake which will afford ground for relief from a contract by reforming it, means a mistake reciprocal and common

to both parties, where each alike labors under the misconception in respect to the terms of the written instrument. Note to *Page* v. *Higgins,* supra, 5 L. R. A., 157.

A constructive trust is raised by a court of equity whenever a person, clothed with a fiduciary character, gains some personal advantage by availing himself of his situation as trustee. Lewin on Trusts, Vol. 1, page 246.

Constructive trusts include all those instances in which a trust is raised by the doctrine of equity for the purpose of working out justice in the most efficient manner, when there is *no* intention of the parties to create such relation, and in most cases contrary to the intention of the one holding the legal title, and when there is not express, or implied, written or verbal declaration of trust. 2 Pom. Eq. Jur. sec. 1044, and cases cited; Perry on Trusts, sec. 166; *Griffith* v. *Godey,* 113 U. S., 89.

The principle upon which a court of equity elicits constructive trusts might be pursued into numerous other instances, as if a factor, agent, partner, inspector under creditors deed, *or other confidential person,* acquire any pecuniary advantage to himself through the medium of his fiduciary character, he is accountable as a constructive trustee for those profits to his employer or other person whose interest he was bound to advance. Lewin on Trusts, vol. 1, page 187, and cases cited.

The same authority, vol. 1, 8th edition, page 208, after treating fully the subject of acceptance of the trust, says: "We may add in conclusion, that if a person by mistake or otherwise assumes the character of trustee, when it really does not belong to him, and so becomes a trustee de son tort, he may be called to account by the cestúi que trust for the monies he received under color of the trust."

In this State, jurisdiction in equity in cases of "mistake" is expressly conferred by statute. Nor is it in terms limited to mistakes of fact. The Legislature may be presumed to have used the word as generally understood in equity proceedings. *Jordan* v. *Stevens,* 51 Maine, 78.

It is firmly settled that if a person has assumed to act as trustee, and having received money in that character, misapplies it, he is accountable for the proceeds to the cestui que trust, and cannot defend himself by showing that in fact he was not legally a trustee,

or that when he committed the breach he did not know who his cestui que trust was. Lewin on Trusts, vol. 1, page 905, and cases cited.

Equity will afford relief when the mistake is that of both parties, and the mistake is properly established by the evidence. *Young* v. *McGown,* 62 Maine, 56; *Andrews* v. *Andrews,* 81 Maine, 337; Whitehouse Equity, 97; *Brunswick and Topsham Water District* v. *Topsham,* 109 Maine, 334.

From a careful examination of all the evidence, we are of opinion that the exception to the finding that the defendant was a trustee is not well taken, and that the exception as to the investments must also be overruled. It is well established that in the investment of trust funds, trustees are to conduct themselves faithfully and exercise sound discretion, not with a view to speculation, but to make a disposition of the trust fund considering the probable income, as well as the probable safety of the capital to be invested. The defendant does not show that he did either in respect to the attempted investment in the stock of the United Fruit Company, and he does not claim that the investment in Amalgamated Copper stock was such an investment in view of our conclusion, nor is his claim that he was a mere custodian supported by law or fact. The term "custody of property" as contra distinguished from legal possession, means the charge to care and keep for the owner, subject to his order and direction, without any interest or right therein adverse to him which every servant possesses with regard to the goods of his master confided to his mere care, which custody may be terminated and prolonged according to the will and pleasure of the master. *People* v. *Burr,* 41 How. Pract., 283-296; Words and Phrases, 1800.

The master's report and final decree are sufficiently supported by the evidence, and no error appears to warrant a reversal of the findings. *Railroad Company* v. *Dubay,* 109 Maine, 29; *Cary* v. *Herrin,* 62 Maine, 16.

The plaintiff excepts as to taxes, and commission allowed the defendant, and says that allowance for taxes can be made only on the theory that the defendant had paid taxes on the bonds, and quotes from the answer the allegation that "as the reputed owner of the bonds, and as it now appears for the benefit of the plaintiff, he paid taxes on said bonds from 1899 to the present for

which payment he claims to be reimbursed by the plaintiff." And plaintiff makes the point that the allegation must be supported by the evidence, or no allowance can be made for taxes, and for two reasons: (1) because that is the formal ground for allowance set up in the answer, and (2) because on no other ground could a trustee be allowed for taxes."

Whether payment of such tax was made by the defendant was a subject of sharp contention before the master, and objections were made against the testimony of defendant in respect to the circumstances attending the assessment and payment, but the objections were nullified by the plaintiff later calling out in cross-examination the details of the matter to which he had objected. The subject was heard fully by the master, and it appears that every opportunity was afforded both sides to present all the facts under full instruction from the court; and in the absence of error, his report having been confirmed, may not be disturbed.

The plaintiff claims that a mutual mistake as to the ownership of the bonds resulted in her injury, and gives her the right to ask the court in equity to grant relief. Her counsel relies upon the equities arising out of a mutual mistake, and it is upon that ground alone that the bill can be sustained. And so appearing, and thus supported, the plaintiff's right to relief appeals to the conscience of the court, and just as imperatively, the mistake being mutual, the rights of the defendant call for the consideration and protection of the court.

Payments made by defendant for taxes on the bonds should be allowed him, as it does not appear that the plaintiff was entitled to the gross income from the fund.

The exception as to the commission cannot be sustained. The relationship does not change the rights involved. The mistake was discovered after the case was entered, and all that happened thereafter was referable to the mistake, and the remedy upon equitable principles must be applied so that the parties may enjoy the rights belonging to them before the mistake occurred. Commission was not waived, and services were rendered, which under the statute justified the allowance made in this case. R. S., chap. 65, section 37.

As a general rule, he who seeks to be relieved from the consequences of a mistake must see that the party against whom relief is sought is remitted to the position he occupied before the transac-

tion in which the mistake occurred. This rule is of general application in all cases where relief is sought against accident, mistake or fraud, and is based upon the equitable maxim that he who seeks equity must do equity. Eaton on Equity, Sec. 118.

It is the opinion of the court that the decree below should stand unreversed and unmodified. The entry will be,

> *Bill sustained.*
> *Plaintiff's exceptions overruled.*
> *Defendant's exceptions overruled.*
> *Decree below affirmed with additional costs.*