MARY DeBARTH WALBACH *v.* JAMES DeBARTH WALBACH.

[No. 4, April Term, 1933.]

*Decided May 24th, 1933.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, DIGGES, PARKE, and SLOAN, JJ.

*Jesse Slingluff, Jr.,* and *Fendall Marbury,* for the appellant.

*Harry E. Karr,* with whom were *Karr & Colgan* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

This appeal is from an order refusing enforcement of an agreement made in compromise of pending litigation, and of the controversy out of which the litigation arose, and dismissing the petition for relief. The appellee, one of the parties against whom the relief is asked, resisted on the ground that he had signed the agreement, and compromised the controversy, under a mistake as to rights which had been previously secured to him, and which would by the terms of the agreement be disposed of. And the case involves consideration of the extent of a power of conveyance vested in trustees in a series of deeds creating the trust, conformity of a conveyance by those trustees and back to themselves on

changed terms of trust, a suit for cancellation and annulment and return to the first terms, a compromise agreement on new terms, a repudiation of the compromise by one of the parties in interest, and the petition now to be acted upon for enforcement of the compromise. The parties to the original suit are two sisters and the son of one of them. This son resists the petition of his aunt for enforcement. It is stated in the petition that the original complainant in the suit, the mother of that son, has not, to the knowledge of the petitioner, made any attempt to repudiate the compromise; and she has not answered or otherwise entered into the controversy on the petition.

The bill initiating the suit was filed by Mrs. Eleanor L. Walbach, widow, and mother of James deB. Walbach, against her sister and against herself and her son as trustees; and it averred that the deceased mother of the sisters, during her lifetime, in 1909, had caused a number of ground rents previously owned by her to be transferred in trust to herself and her daughter, Mrs. Eleanor Walbach, as trustees, with a provision for payment of two-thirds of the income to the mother during her life and one-third to that daughter, a further provision for payment after the death of the mother of four-fifths to that daughter and one-fifth to the other daughter, Miss Mary Walbach, and a still further provision for payment in remainder after the death of that daughter to any child or children of hers until the youngest should arrive at the age of twenty-one years, upon which event four-fifths of the principal was to be delivered to the children. Power was expressly reserved to sell, convey and reinvest, and to change investments. Mrs. Eleanor Walbach is living, and has only the one child, the appellee, James deB. Walbach, born in about 1893; and he was therefore the remainderman entitled under the deeds of 1909.

The unequal division between the two sisters, it was averred, was made according to the expected needs of the two, it being the expectation that the sister, Miss Mary Walbach, would be provided for by aunts with whom she lived,

and who were especially attached to her, and each of whom had the same amount of principal that the mother of the two sisters possessed. Later, in the year 1916, the attachment of the aunts for the one sister was interrupted, and because of a belief that she, Miss Mary Walbach, would not under the changed circumstances receive any provision from the aunts, her mother and her sister, as trustees, united in an effort to change the division of their income by conveyance to Leigh Bonsal, their attorney, and back to themselves as trustees, giving each daughter half or equal provision for support, after the mother's death, and providing remainders in the halves to any children of the two, with an additional provision of a right in the daughter, Mary, to have rents to the value of $4,000 sold and the proceeds turned over to her in case of need. Power to appoint a trustee in the mother's place was reserved. The mother died on July 14, 1930, and James deB. Walbach was, in October, 1930, appointed trustee.

That being the state of the record titles to the rents, the bill of complaint, filed a year after the mother's death, on July 14th, 1931, sought annulment of the deeds of 1916, and return to the division of income under the original deeds of 1909, on the ground that the expectation that the daughter Mary would need the larger share had not been realized, because on the death of her aunts she had in fact received the provision originally expected from them, and with that provision added would, if the division of 1916 be still adhered to, receive not an income equal to her sister's, but a total of $4,200 a year as compared with $1,600 retained by the sister. Miss Mary Walbach has not answered the bill. Five months after the institution of this suit, an agreement of compromise and settlement of it was signed by both the daughters and the son of Mrs. Eleanor Walbach, or James deB. Walbach, the present appellee; and it provided that, in place of the shares of income and principal specified in 1916, the sum payable in cash to Miss Mary Walbach should be reduced to $2,500, and only one-fourth of the total in-

come from the rents should be paid to her, and three-fourths should be paid to her sister Eleanor, with a right to one-half in Mary Walbach for the remainder of her life if she should survive her sister. It was also provided that Miss Mary Walbach should receive one-fourth of the net income of the trust estate arisen since debts of the mother had been paid. When, however, an effort was made to sell a rent to comply with the terms of the agreement by delivering the $2,500 in cash to Miss Mary Walbach, a question arose of the validity of the transfer or change of trust in 1916 as an exercise by the trustees of the power originally reserved them under the 1909 deeds, and when a confirmatory deed was suggested, James deB. Walbach, the appellee, declined to execute it, and repudiated the compromise agreement, on the ground that he signed in ignorance of the contents of the 1909 deeds and of his rights as remainderman under them, and upon a supposition that the deeds of 1916 were valid, and were the original sources of his rights. Thereupon Miss Mary Walbach filed in the suit instituted by Mrs. Eleanor Walbach, which appears to be still open on the docket, the petition for the enforcement of the agreement of settlement. James deB. Walbach answered both as a trustee and as a beneficiary, setting up his defense previously stated and other objections to the granting of the petition, but his mother, Mrs. Eleanor Walbach, as has been stated, did not answer and took no part in the controversy on the petition.

The case stands before the court on the unanswered bill, the petition, and the answer and testimony on behalf of James deB. Walbach; his aunt, the petitioner, offered no testimony. The respondent's testimony was to the effect that while, at the time of his mother's signing the bill of complaint, and therefore before the time of the compromise agreement, he knew of the existence of the deeds of 1909, and of the fact that a trust had been created under them, and while his counsel knew of that original trust, and knew its terms, when the compromise was made, he, the respondent, was not aware of the remainder secured to him in those deeds,

and in the compromise agreement gave up by its terms rights he did not know he possessed. The testimony clearly defined the question in controversy in the suit by Mrs. Eleanor Walbach as one whether the division by the deeds of 1916 could be terminated or revoked, and the division of 1909 returned to, since the need intended to be met in thus departing from the original division had not actually come to pass; and a letter to the complainant from Mr. Bonsal, attorney in the transactions, outlines the discussion preceding the compromise as concerned with these grounds for the exercise of judicial power to set aside the deeds of 1916. All testimony and all exhibits make it appear that, until objection to the contrary was raised on the attempt to make a sale of a ground rent under the compromise agreement, all parties had proceeded on the assumption that the transfer or change of 1916 was a valid exercise of power in the trustees under the deeds of 1909, binding the interests of Mrs. Walbach and her son, and giving Miss Walbach a right to an enlarged share of the rents, unless and until set aside on the ground of failure of the expectation of need in Miss Walbach, which had caused the deeds of 1916 to be made.

But that the transfer or change of 1916 by the mother and the one daughter as trustees in that year was beyond the limits of the power contained in the original deeds of 1909 admits of no doubt. The power was "to sell and convey the property hereby conveyed or any reinvestment thereof, and to invest, and from time to time change the investment of any assets coming into their hands as trustees"; and, plainly, we think this does not include a power to alter the trust under which the property was held, especially so as to reduce or otherwise vary the interest in remainder of James Walbach. The transaction of 1916 seems to have been conceived of as a change by the mother, the original source of the property, with the concurrence of the daughters as beneficiaries, but overlooking the existence of the remainder to be affected, and the necessity of concurrence of the owner. *Huntt v. Townshend,* 31 Md. 336, 338; *In re Bauern-*

*schmidt's Estate,* 97 Md. 35, 54 A. 637; *Taylor v. Cartwright* (1872), L. R. 14 Eq. 167. No effective, binding gift of the property or future income had therefore been made. And on the facts before the court the case appears to be that the compromise which the petitioner seeks to have enforced was one made in a controversy over revoking a gift upon failure of its purpose, under a mistaken assumption on both sides that there was an effective, binding gift to be revoked. The object of enforcement now would be to add, to the provision made by the aunts for Miss Walbach, income surrendered to make up for the loss of that provision, so far as the resources of the two sisters and their mother would then permit. And whereas the effort in 1916 was to secure to the petitioner resources equal to those of her sister, the enforcement now prayed would accomplish a widely unequal division, and leave the sister with an income much reduced for the petitioner's need which did not come to pass. The question whether the petitioner is entitled to the aid of a court of equity to that end is presented at the outset, before any action has been taken on the compromise agreement except for the payment of a small amount of income to the petitioner, and before any further rights have been settled upon the faith of the agreement.

The exposition in *Oxenham v. Mitchell,* 160 Md. 269, 279, 153 A. 71, of the nature and effect of underlying mutual mistakes renders it unnecessary to consider at length whether the mistake of the parties here as to the transfer or change of 1916 was one of law or one of fact. Under some circumstances, at least, such a mistake is one from which a party may be relieved. *Oxenham v. Mitchell, supra; Cooper v. Phibbs,* L. R. 2 H. L. 149, 170; *Allcard v. Walker* (1896), 2 Ch. 369. More frequently the question of relieving from mutual mistakes has arisen in suits for cancellation, but in suits for specific performance, which is not a remedy granted as of right (*Miller, Equity Procedure,* sec. 656), the courts are no more readily disposed to accomplish a result which seems unfair or inequitable. *Kraft v. Egan,* 78 Md. 36, 26 A.

1082; 2 *Pomeroy, Equity Jur.*, secs. 860, 846, 849; 1 *Perry, Trusts,* secs. 184, 185; 1 *White & Tudor, Leading Cas. in Equity* (8th Ed.), 242. It is true that a compromise, and especially a family compromise, which has the support of an equity of its own, will not ordinarily be set aside merely because one of the parties was right in a dispute compromised; and there was a family compromise of restricted scope in this case. Probably, in nearly all differences, one side or the other could, in litigation pushed to a conclusion, be shown to be right and to have had nothing to gain by compromise except release from uncertainty and trouble, but the fact does not detract from the effectiveness of a compromise. Family compromises are strongly favored and supported against subsequent claims of right. *Hartle v. Stahl,* 27 Md. 157; *Hall v. Hall,* 147 Md. 184, 127 A. 858; *Gratz v. Cohen,* 11 How. 1, 13 L. Ed. 579; cases reviewed in notes 38 *A. L. R.* 734 and 759. But particular circumstances guide the courts in this field as in others. "It is certainly true that all agreements for the compromise and settlement of family disputes are favorably regarded, both in courts of law and equity, and are supported, not only as beneficial in themselves, but as conducing to peace and harmony, where it ought most especially to exist. * * * But the principle is not to be carried so far as to work practical injustice. Especially it ought not to override every other rule upon which courts of equity proceed in the enforcement of the specific performance of contracts. A bill for that purpose is always an appeal to the conscience of the chancellor, in which he exercises a sound discretion under all the circumstances, and he will not interfere if the bargain is hard or unconscionable, or the terms unequal, or the complainant is taking an undue advantage from the strict legal construction of the words." Sharswood, J., in *Wistar's Appeal,* 80 Pa. 495. And see *Derlin v. Derlin,* 142 Md. 352, 121 A. 27.

But a distinction is to be observed in this case between the controversy settled, or scope of the settlement, and the assumption from which both parties proceeded in their con-

troversy and its settlement. While this was a family compromise, it was not one of the broad scope found in some cases, in which members of a family agree that, putting aside all questions of origin and extent of the legal rights of the one and the other, they will divide property among themselves as they think it should be divided. Here, after the change attempted in 1916, there was no putting aside of questions of right; in the negotiations the parties stood on their rights and contested them; and the compromise was one of opposing contestants. It was therefore a compromise of limited scope, one of rights arising under a gift which both sides assumed to be valid and determinative of their actions; a compromise from and after that point. In *Lawton v. Campion*, 18 Beav. 87, a compromise had been made on the assumption that certain portioners under a will were entitled to be paid from and after the testator's death, and the controversy settled was on the amounts that should be paid by the life tenant; and when it was decided in another suit that they were not entitled until after the death of the life tenant the compromise was set aside. "The liability of the plaintiff to pay," said the Master of the Rolls, "was not in fact compromised; but the amount which he would have to pay under a liability assumed and admitted on both sides, was the thing compromised, and the only subject of the compromise. * * * Undoubtedly a family arrangement was entered into in this case, but the question is what it included." So in *Allcard v. Walker* (1896), 2 Ch. 369, there was a postnuptial settlement of present estate and future interests of the wife, and upon a divorce on the ground of the wife's adultery a varied arrangement was made between the parties, and property which both assumed to be included within the terms "estate" or "future interests" in the first settlement was included in the second; but later, the wife secured a decree releasing that property upon a decision that by the proper construction it was not so included in the first settlement, and therefore had been included in the second by mutual mistake. And see *Oxenham v. Mitchell*, 160 Md. at

page 280, 153 A. 71, etc.; *In re Roberts* (1905), 1 Ch. 704; *Lord Beauchamp v. Winn,* L. R. 6 H. L. 223, 234; *Daniell v. Sinclair,* 6 App. Cas. 181, 190; *Bennett v. Merriman,* 6 Beav. 360; *Trigge v. Lavallee,* 15 Moore P. C. 298; *Edwards, Law of Compromise,* 121; 1 *White & Tudor, Lead. Cas. in Equity* (8th Ed.), 242; *Tarbox v. Tarbox,* 111 Me. 374, 380, 89 A. 194; 2 *Pomeroy, Equity Jurispr.,* sec. 846 note. The case now presented is similar, containing as it does the un-contradicted fact of the mutual assumption that there had been a formal, binding enlargement of Miss Walbach's in-terest in 1916, by exercise of the power vested in the trustees, and the only question in controversy, and made the subject of the compromise, being whether such a binding transfer could be revoked because of the failure of its object, after it has turned out that, contrary to the underlying assumption, there had been no effective, binding transfer. The difficulties and uncertainties of litigation of that question were the sub-ject of compromise. It cannot, perhaps, be said that such a mistake must in all situations justify setting aside a com-promise; the principles of law concerning relief from mis-takes in equity are somewhat unsettled, and facts of a par-ticular case must determine the outcome. Here, the compro-mise being the result and partial carrying out of a gift made for a purpose no longer to be accomplished, and the result of enforcement now being a perversion of the gift as de-scribed, and the accomplishment of an unequal, unjust divi-sion in the place of a needed and just one, we think the court rightly refused the petitioner its remedy of specific per-formance.

So much concerns the refusal of the son and remainder-man to comply with the compromise agreement; and on be-half of the petitioner it is argued that the conclusions an-nounced would affect only his part of the benefits from the trust estate, leaving his mother's portion unaffected, and that as the mother has not answered and opposed the petition, the prayer for enforcement should have been granted as to her. The court below dismissed the petition both as to mother

and as to son, and it is argued that enforcement should on the contrary have been granted as to the division of the mother's benefits. But the peculiar fact that the petition itself has declared that the mother was not opposed to compliance with the agreement showed that the first essential of judicial interference, need of it to overcome opposition, was lacking. In view of that fact, it seems to us it could not be held that the court erred in refusing its order for relief against the mother. We refrain from further comment on the mother's legal situation, as we still have no information that any interference by the courts with her action or inaction is necessary or desired.

*Order affirmed, with costs.*