William M. WOLFF and Louise L. Wolff

v.

Harriet C. GIBNEY and the First National Bank of Bar Harbor.

Supreme Judicial Court of Maine.

May 16, 1978.

Foster Law Offices by Philip R. Foster (orally), Ellsworth, for plaintiffs.

Roger G. Chagnon (orally), Ellsworth, for defendants.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ., and DUFRESNE, A. R. J.

ARCHIBALD, Justice.

This is a jury waived case seeking equitable relief in which a Justice of the Superior Court ordered the defendant, Harriet C. Gibney, to execute and deliver to the plaintiffs a so-called "first refusal option" on her present home in Bar Harbor. However, since the plaintiffs' complaint sought an immediate conveyance to them of the fee in this real property, they have appealed.

We deny the appeal.

Although the record is confusing, the facts, devoid of technicalities, may be reduced to these. In 1970 the defendant and her then husband owned a dwelling house which was situated on a rather large lot in Bar Harbor (hereinafter Lot A) out of which they sold a much smaller lot (hereinafter Lot B) to one Skinner who simultaneously, but by an independent instrument, gave the defendant (1) the right to pre-approve any structures thereafter to be constructed on Lot B and, (2) a "first refusal option"[1] thereon.

In substance, the option provided that if within twenty-one years thereafter the then owner of Lot B wished to sell it and had obtained a bona fide offer to purchase the same, the defendant, or her heirs or assigns, was entitled to notice thereof with the right to purchase this realty "at the amount of said bona fide offer." Only if the defendant, or her heirs or assigns, failed to exercise this option could the then owner of Lot B convey it to a third person.

The facts underlying the controversy now before us arose in December, 1972 and January, 1973 when various instruments and conveyances were executed and recorded in the Hancock County Registry of Deeds:

(1) On November 25, 1972, Mrs. Gibney, by conveyance to Skinner, released Lot B from the approval necessary to be obtained prior to erecting any structures thereon, which instrument was recorded on January 17, 1973.[2]

(2) On December 14, 1972, Mrs. Gibney conveyed Lot A (excluding Lot B previously conveyed out in 1970) to the plaintiffs and included within that conveyance what would appear to have been an assignment of the first refusal option given to Mrs. Gibney by Skinner in 1970. The plaintiffs' deed was recorded *January 16, 1973.*

(3) On December 21, 1972, Skinner conveyed Lot B and an adjoining parcel containing approximately .4 acre to Mrs. Gibney. This instrument was recorded on *January 17, 1973.*

The same law firm prepared all of the instruments hereinbefore described as having been executed and recorded in December, 1972 and January, 1973.

Lot B and the additional land purchased from Skinner was used in 1973 by Mrs. Gibney on which to construct a new dwelling house. The Wolffs were, or should have been, aware of this since they were occupying the adjacent property on Lot A during the construction period.

In 1974, while the title to Lot B was being examined, it was noted that the inclusion in the deed to the plaintiffs of the first refusal option created a cloud upon Mrs.

---

1. This designation is somewhat misleading. The so-called "first refusal option" in the instant case could more accurately be described as a "pre-emptive right" or a "preferential right of first purchase." Unlike an option, a pre-emptive right does not give the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emptive right at the stipulated price." 77 Am.Jur.2d *Vendor and Purchaser* § 49 and cases cited therein. *See*

*Gillespie v. Worcester,* Me., 322 A.2d 93, 95 (1974).

2. Mrs. Gibney was intending to build a dwelling which involved the use of Lot B but because of a local zoning ordinance she had to acquire additional land which was purchased from Skinner on December 21, 1972, making the total area owned by Mrs. Gibney then equivalent to one acre, which brought it within the zoning regulations. The record is not clear whether the structure was actually located on Lot B or on this newly acquired lot, or both.

Gibney's title.[3] A request for a release was made of the plaintiffs by the same attorney who was the original scrivener. This request was refused and the present legal proceedings were instituted in 1975 by the plaintiffs filing a complaint seeking specific performance of the first refusal option which was included in their deed of December 14, 1972. Mrs. Gibney answered and counterclaimed, seeking reformation of her deed to the plaintiffs, as follows:

"[Defendant], having exercised the first refusal option granted to her . . by . . . Skinner . . ., the [plaintiffs] hereby covenant and agree that [Lot B] shall be held by [defendant] . . . subject to the said first refusal option for the benefit of the said [plaintiffs] and their respective heirs and assigns as owners of [Lot A] under the same conditions and limitations as set out in said [1970 option]."

At trial the issue reduced itself to this:

■ Was it the intention of the parties that the plaintiffs be granted a first refusal option on Lot B as of December 14, 1972? *Or* was it intended that this option apply to Lot B only after the defendant acquired title thereto? In short, had there been a mutual mistake made when the deed to the plaintiffs included the first refusal option on Lot B, the title to which was then in᥈ Skinner? The Justice below, after full consideration, ruled that such a mutual mistake existed and ordered, (1) the plaintiffs to execute a release of the first refusal option recited in their deed and, (2) the defendant to execute a new first refusal option on Lot B running to the plaintiffs. The effect of this, of course, was to give the plaintiffs the right to purchase Lot B if, within the time specified, the defendant should elect to sell the same and receive a bona fide offer therefor.

The Justice below was faced with conflicting testimony. If the Wolffs' testimony were to be accepted, a factfinder could conclude that at least Mr. Wolff believed he and his wife obtained an option on Lot B, which was then owned by Skinner (thus making Skinner's subsequent sale to the defendant, without first offering it to the plaintiffs, a violation of this option). On the other hand, the scrivener of plaintiffs' deed, whose law office represented both parties, testified as to his intent concerning Lot B: "Mrs. Gibney was to buy the lot [from Skinner] and the option only applied to any future sale by Mrs. Gibney of the small lot." That Mrs. Gibney felt likewise is self evident from her own testimony and her act of utilizing Lot B and the additionally acquired land on which to construct her new home.

In his ultimate conclusion the Justice below stated:

"The Court is satisfied that the parties did not intend that the Wolffs have first refusal on the sale by Skinner."

It was the duty of the factfinder to resolve this factual dispute and not that of the appellate court. Our review of the record fails to produce any evidence that the finding was "clearly erroneous." Rule 52(a), M.R.Civ.P.

Bearing in mind that the Justice below was factually supported when he held that "the *parties* did not intend" the result that a literal reading of the 1972 deed from the defendant to the plaintiffs would indicate, we must conclude he found that *both* the plaintiffs and the defendant had made a mutual mistake by using the option language of the deed. This meets the definition found in *Tarbox v. Tarbox*, 111 Me. 374, 380–81, 89 A. 194, 197 (1914), namely:

"A mutual mistake which will afford ground for relief from a contract by reforming it means a mistake reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument."

The foregoing concept of mutual mistake is supported generally, particularly where the courts have been concerned with mutual mistakes as to the legal effect of the provi-

3. Despite the possible cloud on the title, defendant The First National Bank of Bar Harbor did take a mortgage on Lot B from Mrs. Gibney.

sions of deeds. *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 67 (1959); *Gettel v. Hester*, 165 Neb. 573, 584, 86 N.W.2d 613, 621 (1957); *Kolker v. Gorn*, 193 Md. 391, 67 A.2d 258, 261 (1949); *Scott v. Grow*, 301 Mich. 226, 236, 3 N.W.2d 254, 258 (1942); *Gross v. Stone*, 173 Md. 653, 197 A. 137, 142 (1938). This conclusion finds further support in Restatement, *Restitution* § 51, *see* Comment b (Illustration 4).

Having determined that the finding of mutual mistake was factually and legally unassailable, our next problem is to determine whether there was legal error in issuing the order which, in effect, served to reform the plaintiffs' deed. We find none.

■ Equity has been long considered to be the proper forum in which to seek reformation of deeds. *See Martin v. Smith*, 102 Me. 27, 32, 65 A. 257, 259 (1906). Where, as here, there has been a mutual mistake which has been established by the proper quantum of evidence, equity will afford appropriate relief. *Day v. McEwen*, Me., 385 A.2d 790 (1978); *Perron v. Lebel*, Me., 256 A.2d 663, 666 (1969); *Tarbox v. Tarbox*, *supra*.

It is unnecessary for us to consider the question of laches since we have already determined that the Justice below granted the plaintiffs all the relief to which they were entitled.

The entry is:

Appeal denied.

Judgment affirmed.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.