Terry **GUNZINGER**

v.

**C & G ESTATES, INC.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 27, 1992.

Decided July 14, 1992.

---

2. Burnham does not raise and we do not address the issue of sufficiency of the evidence.

Robert J. Daviau, Daviau, Jabar & Batten, Waterville, for plaintiff.

Alton C. Stevens, Marden, Dubord, Bernier & Stevens, Waterville, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

C & G Estates, Inc. (C & G) appeals from an order of the Superior Court (Somerset County, *Smith, J.*) granting summary judgment in favor of plaintiff, Terry Gunzinger, on his claim for reformation of a deed, and against C & G on its counterclaim that Gunzinger was in breach of the parties' agreement underlying the real estate transaction. We agree with the Superior Court's conclusion that Gunzinger is entitled to a judgment as a matter of law and affirm the judgment.

Terry Gunzinger and Ronald Currier were business partners and the sole shareholders of C & G Estates, Inc. Gunzinger and Currier decided to terminate their business relationship and, on May 15, 1990, entered into an agreement to effect such a dissolution.[1] This agreement provided that Gunzinger would resign all positions with C & G and surrender his stock to the corporation. In exchange, C & G would convey to Gunzinger, by quitclaim deed, land owned by C & G adjacent to Skowhegan High School. In accordance with the agreement, Gunzinger resigned and surrendered his stock and received from C & G a deed purporting to convey the property next to the school.

In May 1991, it was discovered that the deed from C & G to Gunzinger misdescribed the property. Despite Gunzinger's request, C & G refused to issue a corrective deed. Gunzinger brought suit in the Superior Court seeking reformation of the deed. C & G filed an answer and counterclaim alleging that Gunzinger was in breach of the May 15, 1990 agreement by defaulting on the mortgage on the subject property.

Paragraph 2 of the dissolution agreement provides in pertinent part:

> Said land with all mortgages shall be the sole responsibility and solely owned by Terry Gunzinger. Should the *mortgage default*, Ronald Currier or C & G Estates, Inc. shall be allowed to repurchase the property for the balance of the outstanding mortgage plus costs (so long as C & G Estates or Ronald Currier is on the mortgage).

(Emphasis added.) The mortgage referred to encumbers the property conveyed to Gunzinger and was executed by C & G in favor of the Skowhegan Savings Bank to secure a loan taken by the corporation in December 1987. C & G remains liable on both the note evidencing the loan and the mortgage. In its counterclaim, C & G sought specific enforcement of the agreement entitling it to repurchase the property in the event of a "mortgage default."[2]

Gunzinger moved for summary judgment on both his complaint and C & G's counterclaim. *See* M.R.Civ.P. 56. After a hearing, the court granted summary judgment in favor of Gunzinger on his complaint for reformation of the deed and against C & G on its counterclaim. In its order, the court reformed the deed to accurately describe

---

1. The parties to the May 15, 1990 agreement were Currier, Gunzinger, and C & G Estates, Inc.

2. C & G had already informed Gunzinger on April 30, 1991 that it intended to exercise its option to repurchase the property. C & G asserted such a right based on information it received from Skowhegan Savings Bank that the March 1991 mortgage payment was overdue and that some of the earlier payments were made late. C & G claimed this to be a default under the mortgage agreement and, thus, a breach of the dissolution agreement.

the property. C & G sought an amendment of the judgment and requested that the court set forth its conclusions of law with regard to the judgment on the counterclaim. *See* M.R.Civ.P. 52; 59(e). The court did so and C & G filed a timely notice of appeal from the supplemental judgment.

Because C & G brings this appeal from a summary judgment entered in favor of Gunzinger, the entire record must be examined to determine whether it supports the Superior Court's conclusion that no genuine issue exists as to any material fact and that Gunzinger is entitled to a judgment as a matter of law. *Saltonstall v. Cumming*, 538 A.2d 289, 290 (Me.1988); M.R.Civ.P. 56. We view the evidence in the light most favorable to C & G as the party against whom judgment has been granted. *Spickler v. Greenberg*, 586 A.2d 1232, 1233 (Me. 1991).

### *Gunzinger's Claim for Reformation*

■ It is clear from the record that the deed given to Gunzinger pursuant to the parties' May 15, 1990 agreement misdescribed the subject property and that the parties were mutually mistaken and were operating under a common misperception with respect to the terms of the written instrument. Indeed, C & G admits as much in its brief to this court.

The reformation of a deed, a remedy in equity, is appropriate when both the seller and purchaser are mutually mistaken as to a term of conveyance, such as the location or legal description of the property. Horton & McGehee, *Maine Civil Remedies* § 14.3–5 (1991); *See Wolff v. Gibney*, 386 A.2d 325, 327–28 (Me.1978); *Day v. McEwen*, 385 A.2d 790, 794–95 (Me.1978). A

review of the record discloses that the court properly concluded that there was no material fact in dispute on the reformation issue and that Gunzinger was entitled to a reformation of the deed.

### *C & G's Counterclaim for Specific Enforcement*

■ C & G contends, however, that reformation of the deed was a useless exercise because it is entitled to a reconveyance of the subject property under paragraph 2 of the dissolution agreement as a result of Gunzinger's default. Although there is no apparent dispute between the parties as to the historical facts, C & G contends that summary judgment on its counterclaim was improper because a genuine and material issue of fact remained as to whether Gunzinger defaulted within the meaning of the parties' agreement.[3] The promissory note evidencing the loan states that payments are due on the third of each month and that "[i]f I do not pay the full amount of each monthly payment on the date that it is due, I will be in default." Gunzinger made a number of late mortgage payments to the bank. C & G asserts that because of those late payments, there was a default under the note, and that a default under the note constitutes a default under the mortgage. C & G then argues that because a "mortgage default" occurred, it is entitled to repurchase the property in accordance with the agreement with Gunzinger. We agree with the Superior Court that C & G's contention is without merit.

The agreement provides for a forfeiture only if there is a "mortgage default." The default provisions in the mortgage deed are very different from those in the promissory note. Paragraph 19 of the mortgage pro-

3. C & G also asserts that the affidavit of Lionel N. LaChappelle, vice-president of Skowhegan Savings Bank, submitted in support of Gunzinger's motion, was not in proper form. The LaChappelle affidavit was in proper form. It did, however, contain a misstatement. LaChappelle stated that "No default or delinquent notices have been sent by the Bank to either C & G estates or Terry Gunzinger." While no default was ever declared and no notice of default ever

sent, one delinquent notice was sent in March 1991. Such a misstatement is not a fatal flaw in this case. The issue is whether there was a "mortgage default," not whether a delinquent notice had been sent by the Bank. It is important to note that the delinquent notice referred to here was merely a notice that the March 1991 payment had not yet been received. It was not the type of notice contemplated by paragraph 19 of the mortgage deed. *See infra* note 4.

vides that the lender can require immediate payment in full only if the borrower fails to make a payment in time, the lender sends a notice of its intent to declare a default and foreclose, and the borrower fails to correct the default within 30 days.[4] The bank never declared the mortgage to be in default and never sought to invoke its rights under Paragraph 19.

The plain language of the parties' agreement and the mortgage deed makes it clear that a late payment on the promissory note does not in and of itself constitute a default on the mortgage. A "mortgage default" within the meaning of the agreement requires, at the very least, an uncured default when the bank has made some determination that the note or mortgage is in default and has initiated some action under Paragraph 19 of the mortgage deed. The interpretation urged by C & G, that any late payment (a technical default under the terms of the note), whether or not cured, and whether or not acted on by the bank, would constitute a "mortgage default" entitling it to exercise its option, would work a complete forfeiture of Gunzinger's interests.[5] Such an interpretation is disfavored, *C Co. v. City of Westbrook*, 269 A.2d 307, 309 (Me.1970), and in this case is erroneous as a matter of law, entitling Gunzinger to summary judgment on C & G's counterclaim.

**4.** Paragraph 19 of the mortgage provides in pertinent part:

Lender may require immediate payment in full under this Paragraph 19 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the sums secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:

(i) The promise or agreement that I failed to keep;

(ii) The action that I must take to correct that default;

(iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;

(iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lend-

The entry is:

Judgment affirmed.

All concurring.

er or another person may acquire the Property by means of foreclosure and sale;

(v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(vi) That I have the right in any lawsuit of foreclosure and sale to argue that I did keep my promises and agreements under the Notice and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**5.** Each of the late payments was cured by Gunzinger. Indeed, there was no existing default at the time C & G sought to exercise its option to repurchase.