JENS SILLASEN ET AL., APPELLANTS, V. WILLIAM H. WINTERER, APPELLEE.

FILED MARCH 8, 1906. No. 13,791.

Continuing Trespass: INJUNCTION. Concerning simple acts of trespass equity has, in most cases, no jurisdiction, but, if the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted.

APPEAL from the district court for Keith county: HANSON M. GRIMES, JUDGE. Reversed with directions.

*Wilcox & Halligan,* for appellants.

*Beeler & Muldoon* and *H. E. Goodall,* contra.

AMES, C.

There is no dispute of fact in this case. Appellants are the owners of a contiguous body of land in Keith county around which, in 1903, they plowed a strip in intended compliance with, and for the purpose of securing the protection of, section 8, art. III, ch. 2, Comp. St. 1905, commonly known as the "Herd Law," which reads as follows: "That cultivated lands, within the meaning of this act, shall include all forest trees, fruit trees, and hedgerows planted on said lands, also all lands surrounded by a plowed strip, not less than one rod in width, which strip shall be plowed at least once a year." The strip

was not quite continuous, but there were some breaks or gaps in it which were filled or occupied by fences of the legal standard, so that the incompleteness of the strip was fully supplied within the intent and meaning of the statute. There is some controversy whether the entire width of the strip was plowed upon the lands of appellants or whether it encroached to some extent upon lands of third and, as to this controversy, disinterested parties. We do not think the question is material. The object of the statute is not to promote cultivation of the soil, but to provide a substitute for a fenced inclosure which will suffice to notify the public that the land inclosed is privately owned and exclusively possessed.

For some years prior to this time appellants and appellee had occupied this and other lands belonging to the government, and to individuals, in common for grazing purposes, but when the inclosure above described had been made appellants notified appellee of the fact and required him to restrain his cattle from further trespass upon their land. Appellee not only expressly refused compliance with this request, but practically and continually disregarded it by permitting his cattle, to the number of 150 head or more, to trespass daily upon the inclosed lands, and confessed an intention to continue so doing indefinitely. There are no contract obligations involved in the suit. Appellants sought relief in the lower court by injunction, which was denied them apparently on the ground that they had an adequate remedy by an action at law for damages, and appellee was permitted to show by witness the annual rental value of the lands for grazing purposes. Such a procedure would amount in practice to compelling appellants to lease their land indefinitely for such annual compensation as a jury should see fit to award them and would be equivalent to taking private property, not for public, but for private use. We think that such is not only a principle that the courts will not sanction, but that it is one the practical application of which equity will prevent by injunction. It is, of course,

not intended to hold, nor does the plaintiff contend, that occasional acts of trespass, voluntary or involuntary, that are committed by a solvent person and that are susceptible of compensation by damages recoverable in a common law action, will be restrained by injunction, but such are as far as possible from the nature of the injuries complained of in this action. These were voluntary trespasses. It does not matter in such a case as this, in which an attempt is openly made wrongfully to appropriate the use and occupation in whole or in part of the plaintiff's land, whether the trespasser is solvent or insolvent. A landowner may deny himself a fortune, if he chooses so to do, to insure that his premises shall be put to only such uses as he desires, or that they may remain vacant or unoccupied. Concerning simple acts of trespass equity has, in most cases, no jurisdiction, but the rule is firmly established in this state and elsewhere that, where the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted. *Lynch v. Egan,* 67 Neb. 541; *Pohlman v. Evangelical Lutheran Trinity Church,* 60 Neb. 364; *Peterson v. Hopewell,* 55 Neb. 670; *Shaffer v. Stull,* 32 Neb. 94; 4 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1,357. Appellants might, indeed, have brought successive actions for damages from day to day as acts of trespass occurred, but damages in such cases would have been extremely difficult to measure, and doubtless would not have been as great as the expense of recovery, and the same would have been true of procedure by distraint of the animals damage feasant, if, indeed, the latter would have been at all practicable. The only practical remedy they would have had at law would have been to submit to the trespasses until the end of the grazing season, and then sue for the value of the use and occupation. But such a course instead of protecting their rightful and lawful possession, which is guaranteed to them by the constitution and laws of the land, presupposes a practical abandonment and loss of it.

We recommend that the judgment of the district court be reversed and the cause remanded, with instructions to grant an injunction in conformity with the prayer of the petition.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded, with instructions to grant an injunction in conformity with the prayer of the petition.

JUDGMENT ACCORDINGLY.