JOSEPH BORS, JR., ET AL., APPELLEES, V. JAMES A.
MCGOWAN ET AL., APPELLANTS.
68 N. W. 2d 596

Filed February 18, 1955.   No. 33630.

*Sherman McKinley* and *Hutchinson & Hurst,* for appellants.

*Kirkpatrick & Dougherty,* for appellees.

*Gerald F. Beaver,* amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, Joseph Bors, Jr., and Jean Bors, his wife, brought this action in equity against defendants, James A. McGowan and Zita McGowan, his wife, seeking to enjoin them from interfering with plaintiffs' right of ingress and egress over a 16½ foot roadway extending east and west one-half mile across defendants' farm; to enjoin defendants from interfering with plaintiffs' right to repair and improve the roadway in order to permit travel over it in all kinds of weather; and to obtain general equitable relief. Defendants answered, denying generally but admitting that plaintiffs had a right-of-way over such roadway for ingress and egress purposes. However, defendants alleged that it was a private way, the use of which was limited to plaintiffs only, and denied plaintiffs' right to repair or improve it as they sought to do. Defendants also prayed for an injunction and general equitable relief. Plaintiffs' reply denying generally completed the issues.

After trial, judgment was rendered finding and adjudging the issues generally in favor of plaintiffs and

against defendants. It found and adjudged that on August 2, 1941, when plaintiffs deeded the east half of the northeast quarter and the northeast quarter of the southeast quarter of Section 36, Township 9 North, Range 3 West of the 6th P. M., in York County to defendant James A. McGowan, plaintiffs reserved the north 16½ feet of the northeast quarter of the southeast quarter as an easement for a roadway in order to connect improvements upon lands retained by plaintiffs with a public highway. It found that such easement was appurtenant to plaintiffs' retained lands and vested in them, their heirs, or assigns, and that its use was not limited personally to plaintiffs but might be used by them, their family, tenants, servants, agents, employees, guests, or any other person lawfully going to and from plaintiffs' improvements. It permanently enjoined defendants from preventing, interfering, molesting, or disturbing the rights of plaintiffs, their heirs, and assigns to the use and occupancy of such roadway. Further, it specifically provided: "That the defendants are further forever permanently enjoined from interfering or molesting the plaintiffs in building a grade and filling in the low spots in the road where waters are wont to run or stand; in the areas where the road runs through flat higher ground plaintiffs may grade enough to round up and put a low crown on the road so that the water will not collect and stand on it but the grade shall not be so high nor the ditches so deep in the flat higher areas so as to unreasonably interfere with the defendants rights to cross the road with his farm machinery.

"That the plaintiffs shall place culverts or other facilities for drainage whatever is necessary to permit the water to pass as nearly as is reasonably practicable in the manner and volume as exists by nature.

"That defendants shall be further permanently enjoined from interfering and molesting with the plaintiffs, their heirs, and assigns from improving said road by the use of gravel, black-top, rock, concrete or other similar

materials in improving said easement and said plaintiffs shall have the right to improve said roadway by the use of gravel, blacktop, rock, concrete or other similar materials.

"That the plaintiffs are permanently enjoined from trespassing upon the lands of the defendants but shall confine their use of the easement to the 16½′ strip of land expressly reserved to them in the deed dated August 2, 1941.

"It is further ordered, adjudged and decreed that the plaintiffs and defendants and each of them are hereby enjoined and restrained from doing any bodily harm, injury or threats to each other.

"All costs to be taxed to the defendants."

Defendants' motion for new trial was overruled and they appealed, setting forth numerous assignments, the effect of which was to claim that the judgment was not sustained by sufficient evidence but was contrary thereto and contrary to law. Upon trial de novo under elementary rules with relation thereto, we conclude that the assignments should not be sustained.

The record discloses that the material evidence is not in dispute. Plaintiff Joseph Bors, Jr., and defendant James A. McGowan are brothers-in-law. Such plaintiff's father owned 480 acres of land in Section 36. It was divided by deeds between plaintiff and his brother. Plaintiff thus owned 240 acres. On August 2, 1941, while the family relations were friendly, plaintiff, by warranty deed, conveyed the east 120 acres thereof to defendant James A. McGowan. Such deed provided in part: "The Grantors herein hereby reserve the right and use of the north 16½ feet of the northeast quarter of the southeast quarter (NE¼ SE¼) of the above described land for ingress and egress purposes. * * * And we do hereby covenant with the said Grantee and with his heirs and assigns, that we lawfully seized of said premises; that they are free from encumbrance except as above stated * * *."

A comparable roadway had concededly theretofore been in existence at the same location since about 1914 or at least many years before August 2, 1941. That fact was observed and well known to defendant grantee long before and at the time his deed was executed, when he suggested that such an easement should be placed in the deed. As a matter of fact, there is no other road from plaintiffs' improvements to a highway. It formerly connected with a county road on the east, but in 1943 such road was vacated, and prior to and at the time of the trial the roadway here involved connected with a short road over property belonging to the county, thence into Highway No. 81. Defendants' contention that such roadway did not connect with any recognized road or highway is not sustained by any competent evidence.

About a month after the deed was delivered both plaintiff Joseph Bors, Jr., and defendant James A. McGowan, working together, graded up the road, took out an old broken wooden culvert, and installed a new 16-inch steel culvert in its place at the then lowest spot in the roadway. They thereafter farmed the lands together for about 3 years. Subsequently, the family relations became strained and defendants contended that on April 1, 1944, plaintiff Joseph Bors, Jr., entered into a written agreement with defendants which settled all their difficulties, whereby plaintiff waived his claimed rights to the roadway. Such contention has no merit. In that connection, no such agreement was either pleaded or offered, referred to, or discussed in any manner in the bill of exceptions. True, defendants proposed its inclusion in the bill of exceptions together with certain related oral evidence as an amendment, but the trial court considered and denied the proposal. The bill of exceptions was duly allowed and certified by the trial court as containing: "* * * all of the evidence offered, and all of the evidence given, both oral and documentary, upon the trial of this cause, together with all oral motions, stipu-

lations, offers, objections and rulings of the Court thereon, * * * ." Such bill of exceptions does not disclose that defendants' proposed amendment was ever supported by any evidence adduced in the trial court. In such a situation, the rule is: "A bill of exceptions duly allowed and certified by the trial judge imports absolute verity and its truthfulness cannot be assailed collaterally." Gregory v. Kaar, 36 Neb. 533, 54 N. W. 859. See, also, First Trust Co. v. Glendale Realty Co., 125 Neb. 283, 250 N. W. 68.

At times both plaintiffs and defendants traveled over or along the roadway with their farm machinery. Of course, at all times, plaintiffs and other persons visiting or lawfully having business with plaintiffs had traveled or attempted to travel over the roadway to and from plaintiffs' improvements. By about 1946 the family relations had reached a stage of open hostility and physical violence. Also, the roadway had gradually degenerated, with its grade and shoulders washed out or blown away, or obliterated by traffic, snow, and water washing into or over and across it from defendants' land. In addition, defendant James A. McGowan once listed right on across the roadway, ploughing into it from both sides to and from his land. By that time and subsequently defendants openly refused to permit plaintiffs to improve it, claiming that it was a private way, traversable only by plaintiffs or their family, and began obstructing its use by plaintiffs and others lawfully traveling over it by threatening them with legal proceedings for trespass or to take the case into their own hands and inflict physical harm if they did so. A part of such time defendant James A. McGowan carried a loaded .22 rifle upon his farm equipment.

In July 1951, such defendant published a "LEGAL NOTICE" in the York Daily News-Times, reciting pertinent easement portions of his deed from plaintiffs and telling the public that: "The right-of-way thus created for the use of said grantors is a private way and not a

public highway and its use is hereby forbidden to all persons, except to the grantors named in said deed. JAMES A. McGOWAN, Owner."

By that time and subsequently until the filing of plaintiffs' action and the trial thereof, the roadway, composed of Hastings silt, became and was impassable by motor vehicles except in low gear, with the use of chains or mud tires. Photographs graphically demonstrate that it was generally low and covered with deep ruts, ditches, and holes which filled with water or snow when it fell, leaving the road practically impassable.

Defendants claimed that to permit plaintiffs to improve the roadway as sought would interfere with their irrigation and farming on each side of the roadway. With regard to the latter contention, the judgment of the trial court appropriately and adequately protected defendants by providing that the improvements should be made in such manner that would not "unreasonably interfere with defendants rights to cross the road with his farm machinery." With regard to the first contention, the record discloses that defendants' land drained generally from the south and their irrigation water was siphoned from the south and east across the roadway through a culvert. To improve the roadway as sought would not interfere in any manner with defendants' irrigation. Neither of such contentions has any merit.

Defendants argued that plaintiffs' voluntary conduct precluded assertion of their rights by reason of equitable estoppel. In that regard, as early as Carnahan v. Brewster, 2 Neb. (Unoff.) 366, 96 N. W. 590, this court adhered to the general rule that: "When an estoppel is relied on it must be pleaded." Also, in Hughes Co. v. Farmers Union Produce Co., 110 Neb. 736, 194 N. W. 872, 37 A. L. R. 1314, we held: "In order to let in evidence of an estoppel in pais, the facts constituting the same must be pleaded; such an estoppel cannot be shown under a general denial." See, also, Annotation, 120 A. L. R. 8, citing innumerable authorities from this and

other jurisdictions. Further, in Parkins v. Missouri P. Ry. Co., 76 Neb. 242, 107 N. W. 260, reaffirmed in State v. Cheyenne County, 123 Neb. 1, 241 N. W. 747, and Wright v. Loup River Public Power Dist., 133 Neb. 715, 277 N. W. 53, this court held: "Where a party pleads and relies on an estoppel, the burden of proof is upon him to establish the facts upon which the estoppel is based." It is sufficient for us to say that defendants neither pleaded nor proved any facts which would permit the application of the doctrine of estoppel precluding the assertion of plaintiffs' rights. Defendants' contention in that regard has no merit.

Defendants also contended that laches of plaintiffs precluded them from asserting their rights, since their delay in prosecuting this action prejudiced defendants. In Miller v. Miller, 153 Neb. 890, 46 N. W. 2d 618, this court held: "The defense of laches prevails only when it has become inequitable to enforce the claimant's right, and is not available to one who has caused or contributed to the cause of delay or to one who has had it within his power to terminate the action.

"Where the obligation is clear, and its essential character has not been affected by the lapse of time, equity will enforce a claim of long standing as readily as one of recent origin; certainly, as between the immediate parties to the transaction." See, also, Richards v. Hatfield, 40 Neb. 879, 59 N. W. 777; Schurman v. Pegau, 136 Neb. 628, 286 N. W. 921.

Further, in 21 C. J., Equity, § 221, p. 226, it is said: "If the duty or obligation sought to be enforced is continuing in its character, time runs against plaintiff, not from its creation, but from its repudiation or breach, and continuing breaches create constantly fresh rights of suit, at least where plaintiff's conduct has been such as to forbid an inference of acquiescence." See, also, 30 C. J. S., Equity, § 116, p. 537. In the light of the evidence heretofore set forth and such rules, we conclude that defendants' contention with regard to laches has no merit.

Defendants contended that the judgment did not conform to the allegations and prayer of plaintiffs' petition or the evidence in support thereof. They referred particularly to that part of the judgment which permitted plaintiffs to place culverts or other facilities for drainage wherever necessary and to improve the surface of the roadway with gravel, blacktop, rock, concrete, or other similar materials.

In that connection, this court held in Herrin v. Johnson Cashway Lumber Co., 153 Neb. 693, 46 N. W. 2d 111: "It is the practice of courts of equity, when they once have obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties." Such rule has application here. Plaintiffs' petition appropriately alleged facts with relation to the location, contour, and almost impassable condition of the roadway; that the single culvert theretofore installed was inadequate and defendants had refused to permit plaintiffs to underlay the roadway with sufficient and adequate culverts necessary to carry off the accumulations of water descending upon it from the south and had refused to permit plaintiffs to improve the surface of the road for the purpose of making it an all-winter and weather road. Their prayer was for a declaration that they had a right to do so and to enjoin defendants from preventing it. Defendants' answer denied that plaintiffs had any right under the language in the deed to install culverts or to build ditches and construct an all-weather road, and they prayed for a declaration that plaintiffs had no such rights. In such a situation, the evidence and law amply supported and sustained plaintiffs' allegations as found by the trial court, and defendants' contention has no merit. Also, contrary to defendants' contention, the language of the judgment defining the rights of the parties and granting injunctive relief was clear, specific, and unequivocal, so that the parties could not be misled thereby.

We come finally to the law relating to the nature of the easement and plaintiffs' rights thereunder, bearing in mind the respective contentions made by the parties with relation thereto, as heretofore set forth. In the light of the evidence heretofore recited and the following rules of law which are applicable and controlling, the judgment of the trial court was proper in every material respect.

In Restatement, Property, § 472, p. 2966, it is said: "By a single instrument of conveyance, there may be created an estate in land in one person and an easement in another." See, also, 17 Am. Jur., Easements, § 29, p. 942. Further, the extent of an easement created by such a conveyance is fixed by the conveyance and the meaning thereof is to be found in its language construed in the light of relevant circumstances. Restatement, Property, § 482, p. 3009, § 483, p. 3010.

As stated in Restatement, Property, § 486, p. 3027: "The possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance." Also, as said in 28 C. J. S., Easements, § 90, p. 769: "While a private way may not be used by the general public, it may be used by the owner of the way, his family, tenants, servants, and guests, as well as by persons transacting business with him, in the absence of a special agreement to the contrary."

In Restatement, Property, § 485, p. 3023, it is said: "In the case of an easement created by conveyance, the existence and the extent of any privilege and any duty of the owner of the easement to maintain, repair and improve the condition of the servient tenement for the purpose of increasing the effective uses of the easement or protecting the interests of the possessor of the servient tenement are determined by the conveyance." Further, comment c, p. 3025, says: "In the absence of provisions to the contrary in a conveyance creating an

easement, it will be assumed that the conveyee is given, as incidental to it, the privilege of so maintaining and repairing the premises subject to it as to enable him effectively to make the uses authorized by it. This privilege to maintain and repair is subject in turn to the limitation that the privilege must be exercised in a reasonable manner. To maintain and repair in a reasonable manner means that due account must be taken of the needs of the possessor of the servient tenement." Also, in 17 Am. Jur., Easements, § 111, p. 1005, referring to the owner of an easement, it is said: "The latter may make the way as useable as possible for the purpose of the right owned so long as he does not increase the burden on the servient tenement or unreasonably interfere with the rights of the owner thereof. The right of the owner of an easement of way to make repairs exists without question where the way is impassable and useless without repairs. It has been held that the grantee of an easement may prepare the way for proper use and, hence, may grade, gravel, plough, or pave such way. He may depress the grade of the way so as to make it accessible to a public highway with which it connects." See, also, Guillet v. Livernois, 297 Mass. 337, 8 N. E. 2d 921, 112 A. L. R. 1300, and annotation thereto, citing innumerable authorities.

As said in Restatement, Property, § 453, p. 2914: "An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land." As held in Neilson v. Leach, 140 Neb. 764, 1 N. W. 2d 822: " 'Whether an easement in a given case is appurtenant or in gross is to be determined mainly by the nature of the right and the intention of the parties creating it. If it be in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the grantee as to its use, and there being nothing to show that the parties intended it to be a mere personal right, it will be held to be an easement appurtenant to the land, and

not an easement in gross.' Smith v. Garbe, 86 Neb. 91, 124 N. W. 921." See, also, 17 Am. Jur., Easements, § 10, p. 929.

Also, as said in Restatement, Property, § 473, p. 2967: "When, by a conveyance inter vivos of an estate in land, there is created in favor of a conveyor, by the language of the conveyance, an easement in the land conveyed authorizing a use of that land as could have been made by the conveyor as owner of it, the duration of the easement is determined by the particular language used construed in the light of the circumstances under which the conveyance was made." Also in that connection, as noted in Restatement, Property, § 473, comment a, p. 2971, American courts now generally hold in such situations: "* * * that words of inheritance, though otherwise required, could be dispensed with in the reservation of an easement authorizing a use corresponding to a previous use of his land made by the conveyor if such previous use was made apparent by the physical condition of the land. This holding was placed upon the ground that the privilege of use thus created was, in the hands of the conveyor, prior to a conveyance, a 'quasi-easement,' something already in existence, and, as such, could be 'created' in the manner of an exception rather than in the manner of a reservation. * * * This means that the owner of land who is conveying corporeal interests may retain part of his corporeal interests as incorporeal interests. By his own act, he changes the nature of his interests at the same time that he retains them. Accordingly technical words of creation are unnecessary in the creation of easements of this character." Also, in comment b, p. 2972, it is said: "Easements coming within the rule stated by this Section consist of privileges retained by a conveyor corresponding to privileges which he might have exercised as owner prior to his conveyance."

As recently as Elrod v. Heirs, Devisees, etc., 156 Neb. 269, 55 N. W. 2d 673, we held: "A reservation is always

something taken back out of that which is demised, the creation by the grant of a new right in the grantor from the subject of the conveyance and something which did not exist as an independent right before the grant was made.

"An exception excludes from the operation of the conveyance the interest specified and it remains in the grantor unaffected by the conveyance.

"The legal terms exception and reservation although strictly distinguishable are frequently used interchangeably and indiscriminately. The use of either term is not conclusive and many times is not even significant as to the intention of the parties to the instrument where used or the nature of the provision in which the term appears." In that opinion we quoted with approval and applied Restatement, Property, § 27, p. 80, which says: "The requirement stated in this Section as to the inclusion of words of general inheritance with respect to the conveyee has no application to an exception. The effect of an exception is to exclude from the operation of the conveyance the interest specified and it remains in the conveyor unaffected by the conveyance."

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendants.

AFFIRMED.