WILBUR GETTEL, APPELLANT, V. BURDETTE HESTER, WHO IS
ONE AND THE SAME PERSON AS BURDETTE L. HESTER,
ET AL., APPELLEES.

86 N. W. 2d 613

Filed December 13, 1957. No. 34230.

*Torgeson, Halcomb & O'Brien* and *John D. Knapp*, for appellant.

*Van Steenberg & Myers* and *George P. Burke*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Wilbur Gettel, brought this action in equity, seeking to quiet fee simple title in him as against defendants, Burdette Hester and Alma R. Hester, his wife, to the north half and the southwest quarter of Section 4, Township 13 North, Range 56 West of the 6th P. M.,

in Kimball County, Nebraska. Plaintiff's amended petition, filed August 18, 1956, alleged in substance that he was the owner in fee simple of all the land, but Burdette Hester, hereinafter called defendant or designated by name, claimed to have some right, title, or interest therein. It alleged that plaintiff and defendant acquired the fee title to the land, save and except an undivided one-half of the mineral rights retained by the Federal Farm Mortgage Corporation, by warranty deed dated October 26, 1940, which was filed in the deed records of Kimball County on September 2, 1941; that by warranty deed dated March 29, 1947, and filed of record May 26, 1947, defendants conveyed to plaintiff all of their rights, title, and interest therein in fee simple; and that defendants and each of them are without any rights whatsoever and have no estate, right, title, or interest whatever in or to the land and should be forever barred from asserting same.

In amended answer thereto defendants denied generally, but admitted that Burdette Hester claimed to own some title or interest in the land. For their amended cross-petition, defendants alleged that Burdette Hester was the owner of an undivided one-third interest in the surface acres of the land and an undivided one-sixth interest in the mineral acres of the land, but, notwithstanding that fact, plaintiff claimed to have some right, title, or interest to said land or a part thereof. Defendants then offered to do what was just and equitable, sought to have plaintiff forever barred from asserting any right, title, or interest in or to defendant's undivided interest aforesaid, and to have the title thereto quieted in defendant.

Plaintiff, for reply to defendants' amended answer, denied that defendant owned any title or interest in the land, and renewed the prayer of his petition. For answer to defendants' amended cross-petition, plaintiff denied that defendant was the owner in fee simple of an undivided one-third interest in the surface of the land and

an undivided one-sixth interest in the minerals of the land. It then alleged in substance that defendants were estopped from claiming any right, title, or interest in the land because on March 29, 1947, they executed, acknowledged, and delivered a warranty deed purporting to convey to plaintiff an undivided one-third interest in the land, at which time they owned some right, title, or interest therein, not to exceed an undivided one-third thereof; that at that time plaintiff paid defendants a good and valuable consideration in full for said conveyance, which consideration defendants retained; and that defendants have not subsequently acquired any right, title, or interest in the land and are prevented by delay, neglect, and laches from enforcing any claim which they might have or purport to have therein. Defendants' reply thereto was a general denial.

After trial upon the merits, a judgment was rendered finding that the language of the deed from defendants to plaintiff on March 29, 1947, was uncertain in meaning and there was a mutual mistake by plaintiff and defendants with regard to the extent of the ownership of the minerals in the land at the time of their negotiations and the sale to plaintiff by defendants, both of whom believed they jointly owned all of the mineral rights instead of an undivided one-half thereof; that plaintiff, who lived in Kimball County and was in a position to investigate the records and discover their true interest while defendants were living in Germany, had the deed prepared which reserved one-third of the mineral rights in defendant, when in fact he owned only a one-sixth interest therein. Therefore, the deed should be reformed to reserve such interest in defendant, and quiet title thereto in him. Judgment was rendered accordingly in favor of defendants, with costs taxed to plaintiff.

Thereafter, plaintiff's motion for new trial was overruled, and he appealed, assigning in substance that the trial court erred in so finding and adjudging the

issues, and that the judgment was not supported by the evidence, but was contrary thereto and contrary to law. We do not sustain the assignments.

At the outset we are confronted with a motion filed by plaintiff to strike a supplemental transcript filed by defendants in this court, which included plaintiff's original petition, affidavit, and application for service by publication; order for service; voluntary appearance by defendants; and their original answer and cross-petition. The ground for plaintiff's motion to strike was that the original transcript filed by plaintiff was full and complete as required by the Revised Rules of the Supreme Court, Rule 4a, and contained the amended pleadings upon which the case was tried which had superseded the original petition, and answer and cross-petition, neither of which had ever been offered in evidence during the trial, and could not be considered by this court.

In that connection, rule 4a does as a minimum require, among other things unimportant here, that: "The transcript shall contain: (1) The pleadings upon which the case was tried; * * * and (5) such other parts of the record as the party appealing may desire to include therein." However, section 25-1912, R. R. S. 1943, provides in part: "The transcript shall contain the judgment, decree or final order sought to be reversed, vacated or modified, and all other filings made with such clerk, unless otherwise ordered by the appellant or appellants by the filing of a praecipe at the time of filing of notice of appeal, designating what portions of the record should be included in the transcript." In that respect, plaintiff, as appellant, did not file any "praecipe" as required by such section. Thus, defendants had a right to have "all other filings made with such clerk" made a part of the transcript, because rule 4c provides in part: "After the original transcript is filed in the clerk's office, any party may without leave of court file a supplemental transcript containing any matters omitted from the original transcript." Therefore, plain-

tiff's motion to strike should be and hereby is overruled.

In that situation, we conclude that whether or not plaintiff's original petition which alleged that the terms of the deed dated March 29, 1947, were ambiguous, and defendants' original answer and cross-petition, which alleged mutual mistake, should be considered by this court, requires no discussion except to say that the cause was actually tried by the parties without appropriate objections upon those theories, and the evidence supports the findings and judgment with regard thereto.

Being an equity suit, it is the duty of this court to try the issues de novo, in conformity with rules reaffirmed in Uptegrove v. Elsasser, 161 Neb. 527, 74 N. W. 2d 61.

An examination of the record discloses the following pertinent and controlling facts. By warranty deed, dated October 15, 1940, but not recorded until December 28, 1940, the Federal Farm Mortgage Corporation conveyed the land, "excepting and reserving one-half of all oil, gas and mineral rights therein, which are expressly reserved and retained by the grantor," to one John O. Rich for a consideration of $1,000.

Theretofore, by a written agreement executed on August 31, 1940, and recorded on that date, John O. Rich agreed to convey fee simple title to the land to plaintiff and defendant, free and clear of all encumbrances whatsoever, for a consideration of $1,400, same to be paid $400 cash in hand duly paid and received, and $1,000 on or before 5 years from September 1, 1940. After signing the contract, possession of the premises was to be given to plaintiff and defendant with right of re-entry and possession by John O. Rich upon default. John O. Rich agreed to furnish a good and sufficient abstract showing fee simple title, clear of all encumbrances whatsoever, to plaintiff and defendant upon demand within 60 days from date of demand, which could only be made by them if and when they were able to pay the balance and discharge the contract. It was mutually agreed by and

between the parties that then Rich would make and deliver a warranty deed conveying the premises, "an undivided one-third (1/3) interest to" defendant, and "an undivided two-thirds (2/3) interest to" plaintiff. It will be noted that no reservation of mineral rights was ever mentioned or made in the contract, as was done in the deed from the Federal Farm Mortgage Corporation to Rich, executed thereafter on October 15, 1940. In that connection, defendant saw and signed the contract aforesaid, but for reasons hereinafter noted, never saw the subsequently executed Federal Farm Mortgage Corporation's deed to Rich until this trial.

Be that as it may, by warranty deed dated October 26, 1940, and not recorded until September 2, 1941, after the consideration named in the foregoing contract had been handled and paid in full by plaintiff out of the first crop taken from the land, John O. Rich and wife conveyed the land to plaintiff and defendant, as follows: "An undivided one-third (1/3) interest to" defendant, and "an undivided two-thirds (2/3) interest to" plaintiff, "subject to the reservation of one-half of all oil, gas and mineral rights retained by the Federal Farm Mortgage Corporation." Also, defendant never saw that deed until the trial herein, and it will be remembered that the deed from the Federal Farm Mortgage Corporation to Rich making such a reservation was not recorded until December 28, 1940, some 4 months after the aforesaid contract was executed and recorded.

At time of trial defendant was a major in the United States Army, having served for some 15 years in this country, England, Germany, and Okinawa. Plaintiff and defendant were cotenants of the land and personal friends. During the first part of 1947, while defendant was in Germany, plaintiff wrote defendant a letter asking him if he would sell his share of the land to plaintiff. Knowing nothing about the land, and never having received any rentals therefrom after 1941, defendant decided to sell, and wrote a letter to plaintiff stat-

ing that he would sell his one-third undivided interest in the land for $600, but would retain his undivided one-third of all the mineral rights, not then knowing that he and plaintiff owned only one-half of the mineral rights and the Federal Farm Mortgage Corporation owned the other one-half. Plaintiff thereafter answered defendant's letter, saying that he would accept defendant's offer to sell his undivided one-third interest in the land for $600 and agreeing that defendant could retain his undivided one-third of the mineral rights. On March 4, 1947, defendant answered plaintiff's last letter, saying: "Got your letter couple days ago. Sure glad to hear from you. Sure would like to see you but it is going to be couple years before I get back to the States. Am not sure what I am going to do then. Say Willie I will take up that offer of yours. You can send me the money and the papers and I will get them signed here and sent back to you. Don't send a check or cash but put it in Postal Money Orders. * * * Well will close now Willie and look forward to answer one of these days. Best of luck to you & your wife. As ever your pal Hester."

In other words, defendant living in Germany did not then know that he only owned one-third of one-half, or one-sixth, of the mineral rights. He did not learn that fact until he returned to Kimball in 1952 while on his way back from England to Camp Roberts, California. He had previously heard that plaintiff had leased their mineral rights in the land, so defendant consulted his attorney at Kimball about his mineral rights and learned for the first time that he and plaintiff had not received all of the mineral rights in the deed from Rich but that the Federal Farm Mortgage Corporation owned one-half thereof.

Plaintiff was in the United States Navy from January 1942 until December 1946, but thereafter lived in Kimball County where the land and records were located. However, he evidently did not know that he and defendant owned only one-half of the mineral rights. Thus, in

response to the letters aforesaid, plaintiff employed and paid his own attorney in Kimball to prepare the deed here involved from defendants to plaintiff, and to record same after its execution. Plaintiff gave his attorney all the information necessary for drafting the deed and having it executed. In conformity therewith, it was drafted by plaintiff's attorney and forwarded by his letter to defendant in Nurnberg, Germany, through military channels. That letter said in part: "At the request of Wilbur Gettel, Kimball, Nebraska, I have prepared the warranty deed which conveys to him, your 1/3 interest in and to the North Half and the Southwest Quarter of Section 4, Township 15 (13) North, Range 56, West of the 6th P. M., Kimball County, Nebraska, with a reservation of 1/3 of the mineral rights." The letter then gave specified instructions with regard to execution and acknowledgment of the deed, and said: "As soon as this deed has been signed and acknowledged, both by you and your wife, mail the same to the American National Bank of Kimball, Nebraska, with instructions to deliver the deed to the undersigned upon payment of the sum of $600.00. The bank then will remit to you as soon as I have given the bank the money in exchange for this deed. Mr. Gettel is anxious to close this matter and asks that you execute, acknowledge and return the deed just as soon as possible."

That was subsequently accomplished, and defendant received all of the $600 consideration for the deed except $14 or $15, the deduction of which was not explained, but defendant made no complaint about it. The warranty deed directly involved herein was duly signed, witnessed, and acknowledged in Germany by defendants as grantors, with plaintiff as grantee, on March 29, 1947, and then returned to the bank as instructed. The deed was duly recorded by plaintiff's attorney on May 26, 1947. In the meantime, on May 12, 1947, defendant wrote plaintiff from Nurnberg, Germany, saying: "Say Willie I sent that deed back about five weeks ago all

signed and every thing. Have not heard anything from it so far. Wonder if you could see what is holding everything up. Sure would appreciate it if you would * * * Write when you find time. As Ever Your pal Bert." However, the transaction was subsequently completed. By that deed, defendants conveyed to plaintiff: "All of an undivided one-third interest in and to the North Half and the Southwest Quarter of Section 4, Township 13 North, Range 56 West of the 6th P. M., reserving however, one-third of the mineral rights," followed by a general warranty clause.

Thereafter, on October 5, 1953, defendant was again in Kimball where he consulted with his attorney and had a conversation with plaintiff concerning their mineral rights. Plaintiff, his wife, defendant, and defendant's father were all present. That conversation was corroborated by defendant's father and other evidence, part of which was given by plaintiff himself. Thereat it was agreed by the parties that defendant did and should have one-sixth of the minerals because he had reserved one-third as directed by plaintiff, mistakenly believing, as both of the parties concurrently did, that together they owned all the minerals, when in fact they only owned one-half. At that time and place plaintiff called his attorney, who appears herein, and instructed him by phone to prepare a document for plaintiff to sign the next day, which document was to recite their agreement and settle their respective mineral rights. On the next morning, defendant met plaintiff on the street in Kimball. Plaintiff told defendant that he had to go to Sidney on business but would come back later that day, then sign the document, and turn it over to defendant's attorney. However, plaintiff then drove away and was never seen by defendant again until this trial. Thereafter, the first time that defendant learned that there was any further dispute about their mineral rights was in June or July, 1954, when plaintiff filed this action and his attorney notified defendant thereof while he was

on Okinawa. In that connection, plaintiff admitted that he and defendant had a conversation on or about October 5, 1953, concerning their mineral rights, and that he never again tried to contact defendant. Plaintiff denied any agreement was then reached, but when asked whether he denied subsequently making the statement " 'I have changed my mind,' " he answered, "I don't exactly; no."

At conclusion of the evidence, defendants offered to do what was just and equitable, even to the extent of returning the consideration for the deed and paying one-third of $1,500, admittedly the amount of improvements placed upon the land after plaintiff took title from defendant, but that offer was not accepted.

In construing and applying section 76-205, R. R. S. 1943, this court said: "The primary rule is that the intention of the parties as determined from the whole instrument shall govern. It is only when the intention is obscure or uncertain that resort may be had to subordinate rules of construction and permissible surrounding circumstances." Elrod v. Heirs, Devisees, etc., 156 Neb. 269, 55 N. W. 2d 673. Therein we also held that: "In ascertaining the intention expressed in such an instrument the court is not confined to a strict or literal interpretation of the language used if to do so would frustrate the intention of the parties thereto as gathered from the whole instrument."

That opinion concluded that our Legislature enacted the Uniform Property Act to modify and eliminate some common law technicalities and exactions. For example, section 76-104, R. R. S. 1943, provides in part: "An otherwise effective conveyance of property transfers the entire interest which the conveyor has and has the power to convey, unless an intent to transfer a less interest is effectively manifested."

Also, section 76-106, R. R. S. 1943, provides: "An otherwise effective reservation of property by the conveyor reserves the interest the conveyor had prior to

the conveyance unless an intent to reserve a different interest is effectively manifested."

Further, section 76-206, R. R. S. 1943, provides: "Unless such intention is expressly negatived by the language in the instrument, a covenant in conveyance of real property that the grantor is seized, or lawfully seized, or words to like effect, shall be interpreted as a covenant that the grantor has good title to the very estate in quantity and quality which he purports to convey." In that connection, the record demonstrates that defendant had good title to the very estate in quantity and quality which he purported to convey to plaintiff. We are dealing here with a reservation of property which defendant attempted to retain by the very terms of the deed involved.

In that connection, section 76-209, R. R. S. 1943, has no application herein because the deed involved did not purport to convey a greater interest than the grantor at the time possessed. As a matter of fact, it effectually manifested an intent to transfer a less interest, and defendant had the very interest which he purported to convey. The question here is whether or not the language "reserving however, one-third of the mineral rights" reserved the interest grantor had in all the minerals prior to the conveyance, or effectively manifested an intent to reserve a different interest.

Contrary to plaintiff's contention, we conclude that the reservation in the deed was obscure, uncertain, incomplete, and ambiguous for want of an object from which one-third of the mineral rights was reserved. We are confronted with the question, did defendant intend thereby to reserve only an undivided one-third of the mineral rights in his undivided one-third of the surface, or to reserve his undivided one-third interest thereof in all the land, which in fact was only one-sixth? Plaintiff and defendant were cotenants, and it is generally true that in the absence of ambiguity or mutual mistake: "An exception by a cotenant refers only to his interest, not the entire property." 26 C. J.

S., Deeds, § 140 (4), p. 1014.  However, herein the terms of the deed and reservation were not only ambiguous, but also were prepared by plaintiff as the result of a concurrent mutual mistake.  Any ambiguity therein should be resolved in favor of defendant who did not prepare it and had no choice in the selection of the words used or the arrangement of the sentences.  People's State Bank v. Smith, 120 Neb. 29, 231 N. W. 141.  We have also concluded that:  "Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it."  Bradway v. Higgins, 152 Neb. 724, 42 N. W. 2d 627.

Also, it is generally the rule in cases comparable with that at bar that:  "In construing a reservation or exception, the intention of the parties is to be pursued, if possible, and emphasis is given to the determination of what the grantor meant by the language of the reservation or exception.  A reasonable construction should be given, and the entire instrument and the surrounding circumstances, including the purpose for which the property or right excepted or reserved is intended to be used, should be considered."  26 C. J. S., Deeds, § 140 (5), p. 1014.  See, also, § 83, p. 820.

Under all the circumstances in this case heretofore recited, we conclude that the true intent of the parties herein was that defendant reserved his undivided one-third interest of the mineral rights in all the land, which would be one-third of one-half, or one-sixth, undivided mineral interest in all the land, as concluded by the trial court.  Cases relied upon by plaintiff from other jurisdictions are either distinguishable in fact or law, or we do not desire to follow them.  Any other construction would not only be contrary to the intent of the parties but would also be unjust and perpetrate a fraud

upon defendants. Contrary to plaintiff's contention, we find no theory of estoppel, neglect, or laches which under the circumstances appearing herein could possibly justify any other conclusion. See, James v. McNair, 164 Neb. 1, 81 N. W. 2d 813; State v. Platte Valley Public Power & Irr. Dist., 143 Neb. 661, 10 N. W. 2d 631; Neisius v. Henry, 142 Neb. 29, 5 N. W. 2d 291.

Plaintiff also argued that the theory of mutual mistake could not be considered because not pleaded, and that the pleadings would not permit reformation of the deed to conform with the intent of the parties. The contention has no merit. Plaintiff has evidently overlooked the provisions of sections 25-21,112 and 25-21,115, R. R. S. 1943; the holding in Wells v. Tietge, 143 Neb. 230, 9 N. W. 2d 180, with regard to the sufficiency of the allegations of a petition or cross-petition in a suit to quiet title; and the reaffirmation in Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131, of the rule that: " 'It is the practice of courts of equity, when they once have obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties.' "

Also, in Restatement, Restitution, § 51, comment a, p. 203, it is said: "The mistake may have resulted in the transfer of a larger area of land * * * or in the transfer of a more extensive interest in the subject matter, or of a different subject matter from that agreed to by the parties. In the case of grants of land the usual remedy is by a decree reforming the grant to conform to the agreement of the parties, the decree directing or having the effect of a reconveyance of what is in excess of or different from that agreed to."

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiff.

AFFIRMED.

YEAGER, J., participating on briefs.