County of Sarpy, Nebraska, appellee, v. Lawrence
Iske et al., appellants.
204 N. W. 2d 146
Filed February 9, 1973. No. 38565.

J. Patrick Green of Eisenstatt, Higgins, Kinnamon &
Okun, for appellants.

Dixon G. Adams, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH,
McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

The question is whether a power line and poles were
a privileged use under grant of an easement for con-
struction and maintenance of an agricultural levee. The
district court found for the easement owner, Sarpy
County, and an order accordingly enjoined Lawrence and
Anna Iske, owners of the servient tenement. Iskes
appeal.

The facts are as follows. In 1966 the Corps of En-
gineers of the Department of the Army prepared design
memorandum R-613-1 for construction of a levee in
Sarpy County. The purpose was protection of 3,000
acres of land, some of which the Iskes owned. The memo-
randum provided for electric motors to pump water over
the levee and into the Missouri River. Some of the
water would be runoff, but it was not known whether
runoff from Iskes' land would be pumped.

Subsection 4.3.8 of the memorandum stated that Omaha

Public. Power District would supply power for operation of the motors. It continued: ". . . (OPPD) would build approximately two miles of power line from an existing line to the pumping station." The proposed line was not located, but the site of the pumping station was to be some distance from Iskes' land.

Lawrence Iske attended meetings that Army representatives held to explain the project to farmers, for 2,600 acres were farmland. The representatives often spoke of the electric motors and line. The memorandum to which they sometimes referred was present and available for perusal by the public, although the representatives did not generally encourage such practice.

Lawrence Iske heard nothing about the electric motors or line at the meetings he attended. According to his testimony an Army representative advised him that farming to the toe of the levee would be permissible. Iske studied "a good bit" not only the plans the easement grant was to describe but also other attached plans. One pictured the service pole and another, the pumps. Lawrence Iske testified: "Q. . . . (D)id you see . . . (the pumps) when you looked at it when . . . (an Army representative) showed you the plans? A. No, I don't think he especially pointed them out there. I wasn't interested anyway. That wasn't on my land . . .. Q. Did you know there was going to be some pumps there? A. No, I didn't know that, not on my land."

The easement grant, dated April 7, 1967, described "An Agricultural levee . . . as described in Plan Numbers M (R613) C1-310E of the U.S. Army Corps of Engineers." Those plans did not disclose electric motors or a power line.

In construction of the levee an unstated number of concrete posts were set approximately 12 feet from the levee and either inside or on the boundary line of the easement. The engineers intended the posts to prevent landowners from plowing within the easement.

After construction of the levee and concrete posts,

OPPD over Iskes' protest built a power line with 6 poles, one with a guy wire, within the easement. The line extended to the service pole near the pumping station.

Iskes cross-petitioned for damages from the power line but not from the concrete posts, although Lawrence Iske conceded that the posts served their purpose. Lawrence Iske testified that the power poles substantially interfered with his farming, but the location of the poles with reference to the concrete posts does not otherwise appear.

The extent of an easement created by conveyance is fixed by the conveyance. Bors v. McGowan, 159 Neb. 790, 68 N W. 2d 596 (1955); Restatement, Property, § 482 (1944). If the details are obscure, a reasonably convenient use must have been intended. 2 American Law of Property, §§ 8.65 and 8.66, pp. 276, 277 (1952).

In ascertaining the extent of an easement by conveyance, this court attaches importance to circumstances surrounding the making of the conveyance. The criteria are not exclusive. See, Bors v. McGowan, *supra;* 2 American Law of Property, § 8.66, p. 277 (1952); Restatement, Property, § 483 (1944).

Iskes assert that we should construe the easement (1) to have been gratuitous and thus lessen the weight we give to the expectations of the grantee, and (2) to benefit grantors, the grantee having drafted the conveyance. See, 2 American Law of Property, § 8.67, p. 280 (1952); Restatement, Property, § 483 (b) and Comments g and h (1944); Gettel v. Hester, 165 Neb. 573, 86 N. W. 2d 613 (1957). Respecting the first proposition, the easement was gratuitous in the sense that Sarpy County paid no money to Iskes for the conveyance. With that reservation we assume the truth of the first proposition for present purposes. The second proposition does not require us to resolve every ambiguity under all circumstances against the draftsman.

Details of the easement granted by Iskes are obscure.

In the absence of other language a grant of an easement for an agricultural levee without substantial benefit to land owned by the grantor does not ordinarily confer a privilege for construction of a power line. Under the foregoing rules of interpretation and the evidence the Iskes' grant, however, encompassed construction and maintenance of the power line.

The judgment is affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I dissent for the reasons I now state. The majority opinion acknowledges: "The easement grant, dated April 17, 1967, described 'An Agricultural levee . . . as described in Plan Numbers M(R613) C1-310E of the U.S. Army Corps of Engineers.' Those plans did not disclose electric motors or a power line." The more complete language describing the use is: "An Agricultural levee and obtaining Borrow Material *therefor as described* in Plan Numbers M (R613) C1-310E of the U.S. Army Corps of Engineers." (Emphasis supplied.) Yet the court goes on to hold that the easement may be used for the construction of a power line. It would seem that such a conclusion could be arrived at only upon the theory that the construction of a power line is by definition, usage, or common understanding included within the term "agricultural levee." There is no evidence to support that position. The dictionary defines levee as an embankment designed to prevent flooding. The word agricultural would imply that its purpose is to protect agricultural lands. There is nothing in the language or the plans referred to which could inform or advise the grantor that a power line would be constructed and maintained on the easement site.

Unless a person has some special knowledge he could not know or suspect from the language of the plans referred to that the grant of an easement for an agricultural levee could include the right to build, construct, and maintain a power line. The plain, clear meaning of the

reference to the plans was to describe the dimension of the right-of-way and the location of the borrow area. This is the clear, plain, and unambiguous import of the language "and obtaining Borrow Material therefor as described in Plan Numbers . . .."

As counsel for the appellee aptly observed in oral argument the primary rules of construction are those imposed by the meaning of language. The language is clear. We can go no farther.

The following language from the appellants' brief is apropos and in point: "The use the grantee of an easement may make of the servient estate 'is limited both as to extent and nature to the terms of the original grant.' Webb v. Platte Valley Public Power and Irrigation District, 146 Neb. 61, 18 N. W. 2d 563, 566 (1945); Rest., Property, Sec. 482. Where the language of the grant is specific, no activities outside the user granted may be undertaken. County of Johnson v. Weber, 160 Neb. 432, 70 N. W. 2d 440, 447-448 (1955); Cover v. Platte Valley Public Power and Irrigation District, 162 Neb. 146, 75 N. W. 2d 661, 667 (1956). As this Court stated in County of Johnson v. Weber, supra, 'the rule is that if the grant of an easement or reservation is specific in its terms, it is decisive of the limits of the easement.'

"The ordinary rules of construction applicable to deeds apply to easements by grant. 28 C. J. S., Easements, § 75, pp. 752-753; 25 Am. Jur. 2d, Easements, § 75, p. 481. If the language of an easement 'is couched in clear and unambiguous language', the easement 'is not subject to a construction other and different from that which flows from the language used.' Cover v. Platte Valley Public Power and Irrigation District, supra, 75 N. W. 2d 667; 28 C. J. S., Easements, § 75, p. 753."

At the time the easement was signed the complete plans of the levee system as distinguished from just the portion of it on the defendants' land were not even in existence. These do show that at other points in

the levee system electric pumps would be used and that access to power supply would be needed. The court now in effect has incorporated the complete plans in the easement granted by the plaintiff.

The case of Bors v. McGowan, 159 Neb. 790, 68 N. W. 2d 596, does not, in my judgment, support the action of the court. That case involves simply the right of an owner of an easement for ingress and egress to keep the road in repair so that it remained usable.

The case of the appellee is not one which creates any special sympathy. The levees are beneficial to it. The power line will not substantially increase the burden of the easement. Nonetheless, this is a case where the principles are more important than the equities. The ordinary rules of conveyance should not be stretched to accommodate and remedy the oversight of the draftsman for the United States Army Corps of Engineers.