BELVA THOMAS AND MARIE THOMAS, APPELLANTS, V. MAX WELLER, APPELLEE.

281 N. W. 2d 790

Filed August 7, 1979. No. 42233.

Jacobsen, Orr & Nelson, for appellants.

Richard J. Hove, for appellee.

Heard before KRIVOSHA, C. J., BRODKEY, and HASTINGS, JJ., and COADY and NORTON, District Judges.

COADY, District Judge.

This is an action brought by plaintiffs, as landowners of a fee interest, to enjoin the defendant, as owner of a hunting easement, from coming upon that portion of plaintiffs' land which they claim is not subject to the defendant's easement. After trial to the District Court, the trial judge held for the defendant and dismissed plaintiffs' petition. The plaintiffs appeal and we reverse the judgment of the trial court.

Since 1968 at least, the plaintiffs have owned that portion of the Platte River which lies below or south to southeast of their farm property through increase or extension of their boundaries by action of natural forces. Such accretion land claimed by the plaintiffs has never been surveyed, is not suitable for farming, is used only for hunting, and, hereinafter, will be referred to as the river bottom.

The river bottom is bounded on the north by the north bank of the Platte River and runs about 1,650

feet to what the plaintiffs describe as the center of the main channel of the river. The east and west boundaries claimed are formed by imaginary lines extending at right angles from the north bank at the intersection of plaintiffs' upland farm boundaries with the same north bank. This river bottom is made up of many islands with and without vegetation, many towheads, and large and small channels with varying amounts of running water at various times.

The defendant has been hunting ducks on the plaintiffs' river bottom for about 40 years. Sometime prior to May 1, 1975, the parties began to disagree about their rights in regard thereto and the plaintiffs sued to quiet title in themselves. On May 1, 1975, after trial, the District Court for Buffalo County decreed that the defendant had an easement to hunt on a 2.077-acre, triangular shaped portion of the river bottom together with a right-of-way from the county road near the north bank to the triangle. The decree incorporates a 1974 survey describing the triangle and right-of-way by metes and bounds. The survey did not include or describe the boundaries of the plaintiffs' entire river bottom. The court did describe plaintiffs' land, did quiet their title therein subject to defendant's described easement, and did enjoin defendant from interfering therewith. Neither party appealed that decree.

On October 11, 1977, the defendant, together with a third-party operator, took a bulldozer down his right-of-way and onto his triangle. As all hunters probably do to prepare for the hunting season on constantly changing premises, the defendant cut a ditch to bring water near his duckblind and erected a small dam to insure that it flowed by the blind.

The plaintiffs sued and asked that the defendant be enjoined from trespassing. At trial, one of the plaintiffs testified that the defendant dug the ditch, or a portion thereof, and erected the dam outside the

triangle and on the plaintiffs' land. The defendant testified that the ditch was on the defendant's triangle and that the dam was outside the triangle but on a third party's land.

The trial court on June 2, 1978, found that the defendant "entered upon the river property surrounding the easement hunting area and did there move the sand under the surface of the water for the purpose of deepening a narrow channel and erecting a sand barrier to improve the temporary flow of surface waters of the river next to and abutting the easement area." The trial court then decided that the May 1, 1975, District Court decree did not limit defendant's hunting rights to the 2.077-acre tract described therein because such limitation would defeat the defendant's right to hunt, and dismissed the plaintiffs' cause of action.

The briefs, in substance, discuss two pertinent issues. First, assuming that the defendant could not hunt on a mere 2.077 acres, does the description in the 1975 decree control this case? Second, even if the 1975 description controls, can the defendant be enjoined if his actions have not damaged the plaintiffs or affected their enjoyment of their property?

It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action. Blum v. Truelsen, 139 Neb. 282, 297 N. W. 136 (1941); Wischmann v. Raikes, 168 Neb. 728, 97 N. W. 2d 551 (1959). The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties exercising reasonable diligence might have

brought forward at the time. Wischmann v. Raikes, *supra*. There are settled rules in regard to interpreting the 1975 decree. If an easement, however it may have been created, is specific in its terms, it is decisive of the limits of the easement. If an easement is not specifically defined, the rule is that the easement is such as is reasonably necessary and convenient for the purpose for which it was created. Scheer v. Kansas-Nebraska Natural Gas Co., 158 Neb. 668, 64 N. W. 2d 333 (1954); County of Johnson v. Weber, 160 Neb. 432, 70 N. W. 2d 440 (1955); Cover v. Platte Valley Public Power & Irr. Dist., 162 Neb. 146, 75 N. W. 2d 661 (1956); County of Sarpy v. Iske, 189 Neb. 621, 204 N. W. 2d 146 (1973).

With these rules in mind we must inspect the pertinent portions of the May 1, 1975, decree which follow: "Now on this first day of May, 1975, this matter came on for decision by the Court.

"The Court finds from the evidence that the Defendant Max Weller is entitled on his cross-petition to have an easement for hunting purposes to the 2.077 acre tract of land as more particularly described in Exhibit #6, a copy of which is hereby attached and made a part of this decree by reference.

"The Court further finds that defendant Max Weller is also entitled to the right of way from the present county road to the said 2.077 acre tract for the purposes of duck hunting only.

"The Court further finds that all the rest, residue and remainder of the lands described as Plot 3, and which are the accretion grounds abutting on Lots 9 and 12 in Section 32, Township 9 North, Range 13 West and all that Part of Lot 1 in Section 5, Township 8 North, Range 13 West lying directly south of said Lot 12, is quieted and confirmed in the Plaintiffs, and that Defendant is enjoined from in any way interfering with any use that Plaintiffs wish to make of said lands." The decree is signed by S. S. Sidner, District Judge.

The defendant's brief admits that the hunting easement set forth in the decree is described by metes and bounds but argues that the "easement was given for 'hunting purposes' which would by implication include the immediately adjacent flowing portions of the Platte River." He offers no authority on that point and we see no such implication at all. If that were true, there would be no need for the 1974 survey because the whole of plaintiffs' land gained by accretion would be subject to defendant's easement. We see no ambiguity in the language. The decree is specific in its terms and became decisive herein when the parties chose not to appeal its terms.

The defendant argues that an injunction should not be issued if the right thereto is unclear or the damage complained of nonexistent, and cites Armbruster v. Stanton-Pilger Drainage Dist., 169 Neb. 594, 100 N. W. 2d 781 (1960). We agree that the case properly cites the law but point out that the requested injunction was granted in that case. An injunction was not granted in at least three other cases and the facts therein must be distinguished. See, State v. Merritt Brothers Sand & Gravel Co., 180 Neb. 660, 144 N. W. 2d 180 (1966); Muff v. Mahloch Farms Co., Inc., 184 Neb. 286, 167 N. W. 2d 73 (1969); Arkfeld v. Volk, 198 Neb. 77, 251 N. W. 2d 720 (1977). The fact situations therein did not constitute evidence of a taking by adverse possession or prescription. Adverse possession and prescription cannot be had against the state. The last two cited cases concerned the trespass of water in such small amounts, if any at all, that no adverse or prescriptive taking could be defined or measured.

We find no evidence in the bill of exceptions that the plaintiffs have been or will be damaged in the ordinary sense, or that what was done is irreparable. If the defendant is allowed to continue to go beyond the described triangle, move sand, and erect

barriers, without doubt he will have an extended easement by prescription in 10 years and might establish adverse possession. He admits in the evidence and in his brief that he will continue to do so unless restrained. See 32 A. L. R. 492.

Concerning simple acts of trespass, equity has, in most cases, no jurisdiction, but if the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted. Sillasen v. Winterer, 76 Neb. 52, 107 N. W. 124 (1906). We must admit that the writer has been unable to find a case wherein the facts complained of caused an injunction to be issued and were as simple as moving sand every year. Nevertheless, we now decide that the record herein satisfies all the various requirements for the issuance of an injunction.

The judgment is reversed and the cause remanded to the District Court which is directed to enjoin the defendant from trespassing upon the property of the plaintiffs for the purpose of digging ditches or erecting barriers upon plaintiffs' property not subject to the defendant's hunting easement specifically described in the 1975 decree.

REVERSED AND REMANDED
WITH DIRECTIONS.