768 N.W.2d 436 (2009)
278 Neb. 149
HOMESTEAD ESTATES HOMEOWNERS ASSOCIATION, a Nebraska nonprofit corporation, appellee,
v.
Thomas D. JONES and Michelle L. Peterson-Jones, husband and wife, appellants.
No. S-08-1042.
Supreme Court of Nebraska.
July 17, 2009.
*437 Grant A. Forsberg, of Forsberg & Jolly Law, P.C., L.L.O., Omaha, for appellants.
David V. Chebatoris, of Svoboda & Chebatoris Law Office, Weeping Water, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
STEPHAN, J.
This appeal questions whether the owners of property subject to an ingress/egress easement may prevent the easement holder from upgrading the surface *438 of a roadway over the easement in order to preserve the "charm of the area." We affirm the judgment of the district court for Cass County declaring that the easement holder had the right to upgrade the roadway, where it was not shown that the upgrade would damage or interfere with the enjoyment of the servient estate.

FACTS
Homestead Estates is a subdivision of eight residential lots, each approximately 5 acres in size, located in Cass County, Nebraska. Homestead Estates is legally described as the southwest quarter of the northeast quarter of Section 19, Township 12 North, Range 12 East of the 6th P.M. The Homestead Estates Homeowners Association (the Association) is a Nebraska nonprofit corporation composed of the owners of property within Homestead Estates.
Homestead Estates was developed by Ronald and Jean Barnhart in 2004. At that time, the Barnharts also owned the land legally described as the northwest quarter of the northeast quarter of Section 19, Township 12 North, Range 12 East of the 6th P.M. This land is immediately to the north of and contiguous with the land on which Homestead Estates was developed. The Barnharts established a 66-foot-wide ingress and egress easement running along the east side of this property, from Homestead Estates on the south to Nebraska State Highway 66 on the north. This easement is the only means of access to Homestead Estates. Currently, the easement contains a gravel road known as Red Barn Road.
The plat for Homestead Estates was filed with the Cass County register of deeds on June 24, 2004. The easement is set forth on the plat. The plat specifically notes that the owners of property within Homestead Estates "agree to contribute to the maintenance of the ingress and egress easements." The plat also contains a reference to separate covenants for Homestead Estates that were filed with the register of deeds. One of the covenants specifically references the roadway easement and provides that the Barnharts would install "a non-hard-surfaced roadway into the development so as to service all tracts therein. The road will be rocked initially and at necessary intervals to [e]nsure safe travel over the same." The covenant further provided that the owners of the tracts in Homestead Estates would "pay their equal share of the cost and expense of maintenance, repair, upgrading or snow removal on the roadway."
Appellants, Thomas D. Jones and Michelle L. Peterson-Jones (the Joneses), purchased their residential property in 2005. Their home is located on a separate parcel directly east of the property on which Red Barn Road is situated; the house itself is located approximately 150 feet east of the easement. The parcel on which the Joneses' home is situated does not include Homestead Estates or the easement. At the time the Joneses purchased their residential property, Homestead Estates and the ingress/egress easement which included Red Barn Road were in existence and the plat of Homestead Estates had been filed with the register of deeds.
In September 2006, the Joneses purchased the 40-acre tract immediately west of their residential property and to the immediate north of Homestead Estates. This is the property over which the easement runs. This property is undeveloped and is generally used by the Joneses for recreational purposes.
During the fall of 2006, the Association discussed upgrading Red Barn Road from a gravel road to some type of asphalt or harder, smoother surface. The Association obtained three bids for upgrading the *439 road with asphalt millings. Subsequently, the Joneses' counsel made demand upon the Association to "cease and desist" any upgrade of Red Barn Road. The Association subsequently filed this declaratory judgment action, seeking a determination of the respective rights and duties of the parties with respect to the ingress/egress easement.
A bench trial was held on August 1, 2008. The Joneses testified that they wanted Red Barn Road to remain gravel, because they feared an asphalt or other hard-surface road would detract from the rural setting of their home and cause people to speed on Red Barn Road. The Joneses also expressed concern for the safety of their four children and their pets, based upon their belief that vehicles would travel faster on a hard-surface roadway. A real estate agent testified that paving the road might negatively affect the property value of the Joneses' residence. An engineer testified about the necessity of properly constructing an asphalt road and the expense of constructing and maintaining it.
Based upon this evidence, the district court concluded that the Association had the right to upgrade and maintain Red Barn Road by installing an asphalt surface. The court determined that the Joneses' residential property was not a part of the servient estate, but was "merely a property located adjacent to" the servient estate. The court determined that although the Joneses also owned the servient estate, they had not shown that their use of those 40 acres of undeveloped property would be negatively affected by the upgrade to the easement. The court also found that the Joneses purchased both the residential property and the undeveloped servient estate with full knowledge of the existence of Homestead Estates and the easement. The court's judgment allowed the Association to upgrade Red Barn Road with "crushed asphalt, asphalt milling, or poured asphalt" and to "maintain, repair, upgrade, and remove snow from the roadway" at its expense.
The Joneses filed this timely appeal.

ASSIGNMENTS OF ERROR
The Joneses assign, renumbered, that the district court erred in (1) finding that the plan to resurface Red Barn Road was reasonably necessary for the convenient enjoyment of the servitude, (2) admitting into evidence the covenants for Homestead Estates, (3) finding that the resurfacing of Red Barn Road would not unreasonably interfere with the Joneses' enjoyment of their property, and (4) finding that resurfacing Red Barn Road would not unreasonably damage the Joneses' property.

STANDARD OF REVIEW
[1] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.[1]
[2,3] An adjudication of rights with respect to an easement is an equitable action.[2] In reviewing an equity action for a declaratory judgment, an appellate court decides factual issues de novo on the record and reaches conclusions independent of the trial court.[3] But when credible *440 evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[4]

ANALYSIS
[4, 5] In resolving this dispute, the district court relied upon the principles set forth in the Restatement (Third) of Property,[5] which provides:
Except as limited by the terms of the servitude ... the holder of an easement... is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefitted by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.
The Joneses rely upon § 4.10 in their appeal. Although we have not previously adopted or cited this section of the Restatement, we note that it is consistent with our cases recognizing that an easement "`"carries with it by implication the right ... of doing whatever is reasonably necessary for the full enjoyment of the easement itself"....'"[6] and that the owner of an easement "`may make the way as useable as possible for the purpose of the right owned so long as he does not increase the burden on the servient tenement or unreasonably interfere with the rights of the owner thereof.'"[7] In keeping with our general practice of disposing of appeals on the theories which were presented to the trial court,[8] we apply the principles stated in § 4.10 of the Restatement in our de novo review.
Relying on § 4.10 of the Restatement, the Joneses argue that the record fails to establish that the resurfacing of Red Barn Road was reasonably necessary for Homestead Estates' enjoyment of the servitude. The district court did not make an explicit finding on this issue. In its order, however, the court noted that Homestead Estates had developed significantly in the 4 years since it was initially platted and that traffic had increased over Red Barn Road as the area further developed. The court also noted that various residents of Homestead Estates testified that upgrading the road would improve safety, eliminate potholes, eliminate dust, and make it easier to remove snow in the winter months.
[6] In addition, the district court noted that the Homestead Estates covenants that were incorporated in the plat did not restrict the use of Red Barn Road to that of a rock road, but instead provided that the roadway could be upgraded. The Joneses argue that these covenants should not have been admitted into evidence or considered by the district court because they are not binding on the Joneses. Clearly, the covenants apply only to owners of property within Homestead Estates, and as the Joneses are not such owners, *441 the covenants do not bind them. In the context of the instant case, however, the district court properly considered the covenants as additional evidence relating to the issue of whether the upgrade of the roadway was a reasonable use of the easement by the owners of residential property within Homestead Estates. Based upon our de novo review, we conclude that the district court did not err in implicitly finding that the road upgrade was reasonably necessary or in relying in part on the covenants in reaching that finding.
The Joneses' primary argument is based on the last sentence of § 4.10, which provides that an easement holder is "not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment."[9] Their general contention at trial was that paving Red Barn Road would negatively affect the aesthetic value of their rural setting and would result in increased speeding along the road and thus create safety hazards. The evidence presented by the Joneses in support of these contentions related almost exclusively to how paving the road might impact the Joneses' residential property and their use of it. For example, Michelle Peterson-Jones testified that the proposed upgrade of Red Barn Road
certainly would take away from the charm of the area, and what [the Joneses are] trying to accomplish and what we like to see out our window. You know, we like to see that kind of dirt road area, and I ... absolutely really would prefer not to see an asphalt road, particularly if it's in disrepair.
Likewise, the Joneses' concern regarding potential speeding on a resurfaced Red Barn Road was primarily from their perspective as owners of the land adjacent to the parcel of land which included the easement.
Section 4.10 however, prohibits only unreasonable damage to or interference with the "servient estate," i.e., "[a]n estate burdened by an easement."[10] As the district court noted and the parties do not dispute, the easement over which Red Barn Road runs does not lie on the Joneses' residential property and thus, the concerns raised by the Joneses with respect to that property are not properly considered in the analysis of whether the upgrade would unreasonably affect the servient estate. The servient estate at issue in this action is the undeveloped land owned by the Joneses, and the record is almost entirely silent as to the effect of the road upgrade on this property. Based upon our de novo review, we conclude that the Joneses did not prove that the proposed resurfacing of Red Barn Road would cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the district court.
AFFIRMED.
McCORMACK, J., participating on briefs.
NOTES
[1] City of Ashland v. Ashland Salvage, 271 Neb. 362, 711 N.W.2d 861 (2006); Smith v. City of Papillion, 270 Neb. 607, 705 N.W.2d 584 (2005).
[2] See, Bors v. McGowan, 159 Neb. 790, 68 N.W.2d 596 (1955); R & S Investments v. Auto Auctions, 15 Neb.App. 267, 725 N.W.2d 871 (2006).
[3] Mogensen v. Mogensen, 273 Neb. 208, 729 N.W.2d 44 (2007).
[4] Id.
[5] Restatement (Third) of Property: Servitudes § 4.10 at 592 (2000).
[6] Ricenbaw v. Kraus, 157 Neb. 723, 728, 61 N.W.2d 350, 355 (1953), quoting Scheeler v. Dewerd, 256 Wis. 428, 41 N.W.2d 635 (1950). Accord 28A C.J.S. Easements § 196 (2008).
[7] Bors v. McGowan, supra note 2, 159 Neb. at 800, 68 N.W.2d at 602. Accord 25 Am.Jur.2d Easements and Licenses § 82 (2004).
[8] See, Schindler v. Walker, 256 Neb. 767, 592 N.W.2d 912 (1999); Reavis v. Slominski, 250 Neb. 711, 551 N.W.2d 528 (1996).
[9] See Restatement, supra note 5, § 4.10 at 592.
[10] Black's Law Dictionary 629 (9th ed.2009).