Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/05/2019 09:06 AM CST

Doris Ostwald et al., appellees,
v. Wayne Harold Beck,
appellant.

___ N.W.2d ___

Filed November 5, 2019.    No. A-18-647.

1. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
2. **Easements: Equity.** An adjudication of rights with respect to an easement is an equitable action.
3. **Declaratory Judgments: Equity: Appeal and Error.** In reviewing an equity action for a declaratory judgment, an appellate court decides factual issues de novo on the record and reaches conclusions independent of the trial court. But when credible evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.
4. **Injunction: Equity: Appeal and Error.** An action for injunction sounds in equity. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.
5. **Injunction: Motions to Vacate.** When the circumstances and situation of the parties have changed so that it would be just and equitable to vacate or modify a permanent injunction, the court which granted the injunction may vacate or modify it upon motion.
6. **Injunction: Proof.** The burden is on the party seeking modification of a permanent injunction to show a change in circumstance or situation sufficient to warrant such modification.
7. **Easements: Abandonment: Intent: Proof.** The fact that an easement holder finds a more convenient alternative route instead of using the easement does not deprive the easement holder of the easement that

remains for the holder's use and enjoyment whenever the holder has occasion to use the right.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed as modified.

Matthew M. Munderloh, of Johnson & Mock, P.C., L.L.O., for appellant.

Blake E. Johnson and Paul A. Lembrick, of Bruning Law Group, for appellees.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Wayne Harold Beck appeals from an order of the district court for Dodge County which declared that Wayne's property remained subject to an easement established in 1977 and which enjoined Wayne from interfering with the use and enjoyment of the easement by Doris Ostwald (Doris), Vernon Vodvarka, and Becky Vodvarka (collectively appellees). Based on the reasons that follow, we affirm as modified.

## BACKGROUND

Since 1975, Doris has owned a 40-acre tract of land (the Ostwald 40) used for farming and located in Dodge County, Nebraska. The location of the Ostwald 40 is described as the "Northwest quarter of the Northeast quarter (NW1/4NE1/4), Section 13, Township 20 North, Range 5, East of the 6th P.M." Vernon and Becky rent the Ostwald 40 from Doris and have been farming it for 35 years.

Wayne owns two tracts of land situated directly south and southwest of the Ostwald 40, described as the "Southwest quarter of the Northeast quarter (SW1/4NE1/4)" and the "Southeast [q]uarter of the Northwest quarter (SE1/4NW1/4)" of "Section 13, Township 20 North, Range 5[,] East of the

6th P.M." The trial court referred to the southwest quarter of the northeast quarter as the "South Beck Property," because it was directly south of the Ostwald 40, and the southeast quarter of the northwest quarter as the "Southwest Beck Property," because it was southwest of the Ostwald 40. This land was previously owned by Harold Beck and Ruth Beck, Wayne's parents. Wayne acquired the property by deed of distribution in 2007. Wayne's son, Curtis Beck, farms the property owned by Wayne.

In 1976, Doris filed a petition against Harold and Ruth alleging that she had acquired an easement by prescription of a road on the Southwest Beck property. The petition alleged that the Ostwald 40 was landlocked and that the road on Harold and Ruth's property was the only way for Doris to access her property.

In 1977, the district court for Dodge County entered a judgment finding that Doris, her agents, and her assigns,

> have an easement, eighteen (18) feet in width, for purposes of ingress and egress, running north and south along the East edge of the Southeast quarter of the Northwest quarter (SE¼NW¼), Section 13, Township 20 North, Range 5, East of the 6th P.M., Dodge County, Nebraska [the Southwest Beck property].

It further ordered that Harold, Ruth, and their agents and employees were "perpetually enjoined and restrained from hindering or interfering with" the use of the easement by Doris and her agents and assigns.

In the 1990's, Doris inherited and became the record owner of additional property situated directly north of the Ostwald 40, described as the "Southeast Quarter (SE ¼) of Section Twelve (12), Township Twenty (20) North, Range Five (5), East of the 6th P.M., Dodge County, Nebraska" (the Ostwald 160). The Ostwald 160 is adjacent to a county road and shares a common boundary with the Ostwald 40. Vernon and Becky do not rent or farm the Ostwald 160; it is rented and farmed by a different tenant.

In March 2017, appellees filed the present action seeking a declaratory judgment that the Southwest Beck property remains subject to the easement ordered in 1977. They also sought injunctive relief to bar Wayne, and any of his agents or employees, successors, or assigns, from interfering with the use and enjoyment of the easement. Appellees claimed Wayne had intentionally obstructed their use of the easement, particularly during planting and harvest season.

Wayne counterclaimed, arguing that the court should vacate the 1977 injunction due to a material change in circumstances occurring subsequent to its entry. Specifically, he alleged that the Ostwald 40 is no longer "landlocked," becuase it is accessible by and through the Ostwald 160, and that it is no longer necessary or appropriate for appellees to access the Ostwald 40 through any portion of Harold and Ruth's property. Alternatively, Wayne requested that he and his lessees, invitees, and successors be allowed to irrigate over the easement if the court determined that his property remained subject to the easement. Wayne also alleged a cause of action for trespass, but withdrew this cause of action at trial.

Trial was held in February 2018. The evidence established that Doris had acquired additional property since the 1977 judgment—the Ostwald 160—which made it possible to access the Ostwald 40 without using the easement. Doris testified that the Ostwald 40 can be accessed through the Ostwald 160. Vernon testified that he used the Ostwald 160 during harvest season in 2016 and 2017 to access the Ostwald 40 because Wayne or his son, Curtis, had blocked access to the easement. Vernon testified that the route taken through the Ostwald 160 is located on a wetland, making it difficult to get vehicles across it without getting stuck. He also testified that the route across the Ostwald 160 does not extend all the way to the Ostwald 40; he has to cross farm ground before reaching the Ostwald 40. Vernon further testified that improvements would have to be made to the route before it could be used as regular access to the Ostwald 40. He added

that the route through the Ostwald 160 is part of a restricted wetland and would require approval by the Natural Resources Conservation Service before any changes to the land could be made.

Doris testified that the reason for the 1976 action was because the Ostwald 40 was landlocked; there was no public road to access it. She testified that after the easement was established in 1977, she and her tenants have continually used the easement to access the Ostwald 40 and were still doing so at the time of trial to the extent they could.

Vernon testified that he has always accessed the Ostwald 40 using the easement during the 35 years he had farmed the property and that he enters the Ostwald 40 at its southwest corner as provided in the 1977 judgment. Vernon further stated that he had to "carve a corner" to reach the southwest corner of the Ostwald 40, which meant going outside the boundaries of the easement. He testified that is how the Ostwald 40 has always been accessed.

The evidence also showed that Wayne or Curtis had blocked or hindered appellees' use of the easement at various times. For example, Vernon testified that in 2017, a tractor was parked at the end of the easement preventing access to the easement. He testified that there had been other obstructions blocking the easement in previous years. He testified that Wayne's interference with the easement has created complications in getting crops timely planted and harvested in the Ostwald 40. Doris and Vernon both testified that they have tried to persuade Wayne and Curtis to stop such conduct, to no avail.

Curtis claimed that he had not done anything to intentionally interfere with appellees' use of the easement. He denied parking a tractor in the easement in May 2017, but admitted that he had parked it in such a way that it prevented appellees from accessing the Ostwald 40 through the southwest corner of the field.

Curtis also testified that he had an irrigation pivot near the easement which sprays over the easement, sometimes making

the easement inaccessible or difficult to access because it is wet or muddy. He stated that he was worried about not being able to use the pivot if the easement was enforced.

Following trial, the court entered an order reaffirming the 1977 judgment, making it clear that Wayne, his agents, or employees are permanently enjoined from engaging in any actions which interfere with appellees' lawful right to use the easement, which includes reasonable ingress and egress to the Ostwald 40. The court stated that Wayne is allowed to irrigate "over and on the easement" and that this irrigation does not constitute an interference of the easement. The court additionally stated that appellees have the lawful right to use the easement described by the court in the 1977 judgment, which it further clarified as

> a road 18 feet in width, running north and south along the east edge of the Southwest Beck Property and continuing to a northeasterly direction, thereby to allow ingress and egress of the Ostwald Property at its southwest corner by crossing the northwest corner of the South Beck Property.

The trial court also dismissed Wayne's counterclaim.

## ASSIGNMENTS OF ERROR

Wayne assigns that the trial court erred in (1) awarding appellees injunctive relief and permanently enjoining him and his agents from interfering with the easement awarded in 1977, (2) failing to vacate the 1977 injunction due to a material change in circumstances—Doris' acquisition of other property, and (3) awarding declaratory relief to appellees by reaffirming the existence of the 1977 easement to include a portion of property never before included and the scope and description of which are uncertain.

## STANDARD OF REVIEW

[1] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Homestead*

*Estates Homeowners Assn. v. Jones*, 278 Neb. 149, 768 N.W.2d 436 (2009).

[2,3] An adjudication of rights with respect to an easement is an equitable action. *Id*. In reviewing an equity action for a declaratory judgment, an appellate court decides factual issues de novo on the record and reaches conclusions independent of the trial court. *Id*. But when credible evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Id.*

[4] An action for injunction sounds in equity. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006).

## ANALYSIS

Wayne first assigns that the trial court erred in awarding appellees injunctive relief. However, the trial court did not award appellees any injunctive relief that did not already exist in the 1977 judgment. The court noted that the 1977 judgment provides for a permanent injunction against interference with the easement. It further stated that the question before it was whether the 1977 judgment continued to bind Wayne, and it determined that it did. The evidence showed that Wayne acquired the property by deed of distribution in 2007, and the deed expressly provided that the real estate in the conveyance is "subject to easements and restrictions of record." The easement granted by the 1977 judgment was recorded in January 1977. Wayne does not dispute that the easement passed by conveyance. Accordingly, the trial court reaffirmed the 1977 judgment, making it clear that Wayne, his agents, or employees are permanently enjoined from engaging in any actions which interfere with appellees' lawful right to use the easement. An injunction was already in place; the court simply reaffirmed it.

Wayne next assigns that the trial court should have vacated the 1977 injunction as requested in his counterclaim, because the easement is no longer necessary. He contends that the Ostwald 40 is "no longer landlocked," because appellees can access it by going through the Ostwald 160, and that therefore, there is no reason for the easement to continue.

[5,6] When the circumstances and situation of the parties have changed so that it would be just and equitable to vacate or modify a permanent injunction, the court which granted the injunction may vacate or modify it upon motion. *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996). The burden is on the party seeking modification of a permanent injunction to show a change in circumstance or situation sufficient to warrant such modification. *Id.* Wayne alleges that Doris' acquisition of the Ostwald 160 is a material change in circumstances sufficient to vacate the injunction entered in 1977.

The evidence showed that Doris and her tenants have used the easement continually since it was granted in 1977. They continued to use it up to the time of trial when it was not restricted by Wayne or Curtis. The only reason Vernon used the Ostwald 160 to access the Ostwald 40 was because the easement was inaccessible. Vernon testified that the route he has used across the Ostwald 160 is not a route that could be used regularly or permanently. He testified that it is part of a wetland, making it hard to use without getting stuck. Further, the route does not extend all the way to the Ostwald 40, but, rather, it requires crossing over farmland. Vernon also testified that the route would need work before it could be used regularly and the Natural Resources Conservation Service would have to approve any changes.

[7] We conclude that Wayne has failed to show a change in circumstances to warrant vacating the 1977 injunction. The Nebraska Supreme Court has stated: "'[T]he fact that the easement holder finds a more convenient alternative route does not deprive the easement holder of the easement that

remains for the holder's use and enjoyment whenever the holder has occasion to use the right.'" *Mueller v. Bohannon*, 256 Neb. 286, 296-97, 589 N.W.2d 852, 860 (1999), quoting *Jackvony v. Poncelet*, 584 A.2d 1112 (R.I. 1991). In this case, the alternate route is not more convenient, but, rather, it is less convenient and more difficult to use. Accordingly, appellees should not be deprived of the easement and should be able to use it without Wayne's hindering or interfering with their use. The trial court did not err in failing to vacate the injunction.

Wayne next assigns that the trial court erred by expanding the easement to include a portion of his property that was not included in the easement awarded in 1977 and, further, by not adequately describing the property or the scope of the easement.

The 1977 judgment stated that Doris, her agents, and her assigns are "entitled to use the aforesaid roadway along the East edge of the Southeast quarter of the Northwest quarter (SE¼NW¼), Section 13 . . . and to enter the above property owned by [Doris] at its southwest corner." In the present case, the trial court held that appellees have the lawful right to use the easement described in the 1977 judgment, which it

> further clarified . . . as a road 18 feet in width, running north and south along the east edge of the Southwest Beck Property and continuing to a northeasterly direction, thereby to allow ingress and egress of the Ostwald Property at its southwest corner by crossing the northwest corner of the South Beck Property.

As previously stated, the court referred to the southeast quarter of the northwest quarter of Section 13 as the "Southwest Beck Property," and the southwest quarter of the northeast quarter of Section 13 as the "South Beck Property."

Wayne contends that the property subject to the easement awarded in the 1977 judgment is all within the southeast quarter of the northwest quarter, or the Southwest Beck Property. Wayne argues the court erred when it expanded the easement

to include the northwest corner of the southwest quarter of the northeast quarter, or the South Beck Property, as this property was not included in the 1977 judgment and appellees have no legal right to use such property. He further contends that appellees did not plead or prove any entitlement to use any additional property outside of what was described in the 1977 judgment.

Vernon testified that to enter the Ostwald 40 at its southwest corner as provided in the easement, he has to leave the easement and cross a portion of Wayne's other property. He testified that is the way he has always accessed the Ostwald 40. Based on the evidence, the other land Vernon would be crossing would be the South Beck Property. However, appellees asked the court only to reaffirm the 1977 judgment. Neither party asked the court to modify the existing easement to include additional property not included in the 1977 judgment. We conclude that the trial court erred in expanding the scope of the easement. Accordingly, we modify the court's order to state that appellees have the lawful right to use the easement as described in the 1977 judgment.

## CONCLUSION

We conclude that the trial court did not err in failing to vacate the 1977 injunction, but did err in expanding the scope of the easement to include property not included in the 1977 judgment. Accordingly, we modify the court's description of the easement to reflect the 1977 judgment.

Affirmed as modified.